# United States Court of Appeals
## For the First Circuit

---

No. 01-2101

JACQUELINE T. BENHAM,

Plaintiff, Appellant,

v.

LENOX SAVINGS BANK,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Torruella, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Roy T. Englert, Jr., with whom Daniel Solin, Arnon D. Siegel and Robbins, Russell, Englert, Orseck & Untereiner, LLP were on brief, for appellant.

James E. Wallace, Jr., with whom Renee E. Hackett and Bowditch & Dewey, LLP were on brief, for appellee.

---

June 4, 2002

**TORRUELLA, Circuit Judge.** Plaintiff-appellant Jacqueline T. Benham ("Benham") appeals from the district court's judgment against her on her claim of discrimination under the Employment Retirement and Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Specifically, Benham argues that the district court's judgment is predicated upon a factual finding that has no support in the record. Because we conclude that the district court relied upon a clearly erroneous factual finding in reaching its holding, we reverse and remand this case for a new trial.

### FACTUAL BACKGROUND

From 1976 until 1997, Benham worked full-time at the Lenox Savings Bank (the "Bank") in Lenox, Massachusetts. During her tenure at the Bank, Benham held several positions, ranging in importance from bank teller to senior vice-president in charge of consumer lending. In 1997, the Bank's president, Michael Christopher, abruptly terminated Benham's employment.

On January 15, 1998, Benham filed suit in district court claiming that the Bank unlawfully discharged her in violation of § 510 of ERISA, 29 U.S.C. § 1140, which prohibits the firing of an employee for the purpose of depriving her of employee benefits.[1] During the

---

[1] Section 510 of ERISA provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which

bench trial, Benham introduced several pieces of circumstantial evidence to substantiate her claim. First, because of her seniority and years of experience, Benham's benefits far exceeded those of any other bank employee. Second, Christopher's bonus was directly proportional to the Bank's profits, which gave him an incentive to reduce employee benefits. Finally, Christopher actually reduced several of the Bank's employee benefit plans. For Benham, this evidence led to the inescapable conclusion that she was fired so that the Bank could avoid paying her costly employee benefits.

In response, the Bank asserted that Benham was discharged because she made several improper intra-family loans. In particular, the Bank argued that Benham created multiple conflicts of interest when she approved and defined the terms of loans given to Paula and Joseph Czop, her daughter and son-in-law. According to the appellee, then, Benham was fired for violating the Bank's Code of Conduct, which prohibits the authorization of loans to family members and the extension of credit to them on preferential terms.

Rather than crediting either of the proffered reasons for Benham's termination, the district court introduced an alternative

---

he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

explanation. The court found that Christopher fired Benham "to make an example of her, to demonstrate his power as president of the Lenox Savings Bank." Believing that the district court erred in reaching this factual determination, Benham filed the instant appeal.

### DISCUSSION

It is well settled in our jurisprudence that a district court's factual findings regarding an employer's intent are reviewed for clear error. See Foster v. Dalton, 71 F.3d 52, 55 (1st Cir. 1995). Pursuant to this standard, we will reverse a lower court's decision only if "after careful evaluation of the evidence, we are left with an abiding conviction that . . . [the court's] findings are simply wrong." State Police Ass'n v. Commissioner, 125 F.3d 1, 5 (1st Cir. 1997); accord Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 46 (1st Cir. 1995) (ruling that an appellate court must have a "strong, unyielding conviction that the district court was mistaken" before reversing on clear error grounds).

Benham argues that the district court clearly erred in finding that she was fired because Christopher "wanted to make an example of her, to demonstrate his power as president of the Lenox Savings Bank." After carefully reviewing the record, we have found no evidence whatsoever to support the district court's factual determination. Our search results are corroborated by the Bank's brief

to this Court, which does not cite a single piece of evidence in defense of the district court's theory.

Instead, the Bank argues that "[t]he [District] Court's finding that Christopher wanted 'to make an example of' Benham may be a comment on his management style, but it is not an 'alternative explanation' for his decision to terminate her." The Bank's argument, however, is directly contradicted by the explicit language of the district court's findings. In a colloquy with itself, the district court asked and answered the critical question:

> This leaves us with the key issue. Why at the time [Christopher] fired [Benham] did he do so? . . . He did so to make an example of her, to demonstrate his power as president of the Lenox Savings Bank.

It is clear from this discussion that the district court was specifically describing what motivated Christopher to discharge Benham. Furthermore, this reason was the only one advanced by the district court to explain what caused the termination of Benham's employment.[2]

Having found no support for the district court's ultimate factual finding, we are left with a "strong, unyielding conviction that the district court was mistaken." Indus. Gen. Corp., 44 F.3d at 46.

---

[2] Though the district court found that Christopher believed that Benham violated the Bank's Code of Conduct, the court concluded that what actually caused Christopher to fire Benham was a need to demonstrate his authority. Notwithstanding the Bank's arguments to the contrary, the district court never found that Christopher terminated Benham because he believed that she violated the Code of Conduct.

-6-

We therefore conclude that the district court committed clear error in its findings of fact.

Not satisfied with a reversal, Benham argues that we should enter judgment in her favor because all of the district court's subsidiary findings of fact compel that conclusion.  Though rare, an appellate court may make findings of fact where the record permits only one resolution of the factual issue.  See Pullman-Standard v. Swint, 456 U.S. 273, 291-92 (1982); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 463 (1st Cir. 1992) (stating that "appellate factfinding is permissible only when no other resolution of a factbound question would, on the compiled record, be sustainable").

Though the district court made some findings of fact that clearly support Benham's claim,[3] it cannot be seriously argued that the court's subsidiary findings compel the conclusion that judgment should be entered in her favor.  The district court, for instance, found that Benham directly authorized at least one loan to her family -- an act which may have violated the Bank's Code of Conduct.  Thus, the subsidiary findings of fact can be used as much to support Benham's claim as to defend the Bank's.

In the end, there remains competent evidence from which a factfinder could credit either Benham's or the Bank's version of

---

[3] For example, the district court found "that it was a particular theme of Mr. Christopher's management of the bank to reduce . . . the benefits to be afforded to bank officers and employees."

-7-

events.  Rather than usurping the district court's function and entering judgment in favor of either party, we reverse and remand this case for a new trial.

### CONCLUSION

For the foregoing reasons, we reverse the district court's judgment and remand the case for a new trial.

**Reversed and remanded.**