**John BAUER, Appellant**

v.

**SUMMIT BANCORP.**

No. 01–3624.

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 2002.

March 25, 2003.

Robert A. Vort (Argued), Pearce, Vort & Fleisig, LLC, Hackensack, NJ, for Appellant.

Gary W. Flanagan, (Argued), Edwards & Angell, LLP, Providence, RI, for Appellee.

Before BECKER, Chief Judge, McKEE and HILL* Circuit Judges.

## OPINION OF THE COURT

HILL, Circuit Judge.

Appellant John Bauer appeals from the district court order granting summary judgment for appellee Summit Bancorp (Summit)[1] and denying his cross-motion for summary judgment on his claim (Count One)[2] that Summit's Retirement Plan[3] (Plan) violates the Employment Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 *et seq.* because it excludes hourly employees. Based upon the following discussion, we affirm the judgment of the district court.

---

* The Honorable James C. Hill of the United States Court of Appeals of the Eleventh Circuit, sitting by designation.

1. Bauer was hired in 1977 by United Jersey Bank (UJB). UJB changed its name to Summit Bank in 1996. It is a subsidiary of Summit Bancorp, defendant/appellee.

2. Bauer abandoned his estoppel argument (Count Two) on appeal.

3. Summit's Plan was a defined benefit retirement plan, effective March 1, 1980, and enti-

tled the "United Jersey Bank Financial Corp. Retirement Plan." It was amended and restated, effective January 1994. On May 10, 1995, the Internal Revenue Service (IRS) issued a favorable determination letter with respect to the Plan. It was again amended and restated, effective July 1, 1997, and entitled the "Summit Bancorp Retirement Plan." *See* note 1 *supra.* On August 2, 1999, the IRS issued a second favorable determination letter with respect to the Plan.

## I. BACKGROUND

### A. Facts

The material facts are undisputed. Bauer worked as a Summit sales representative for approximately eighteen and one-half years, from May 9, 1977, until November 6, 1995. He was compensated on an hourly basis, apparently to accommodate his schedule as a firefighter. Thereafter, for approximately 3.667 years, from November 7, 1995, until July 15, 1999, Bauer was compensated by Summit on a salaried basis. Neither party disputes that in each of the years that Bauer was employed, he completed at least 1,000 hours of service per year.

In 1999, after twenty-two years of employment with Summit, Bauer retired. He applied for his retirement benefits under the Plan. Summit's benefit administrators advised him that he was eligible to receive retirement benefits based upon only his 3.667 years of service as a salaried employee. Although his eighteen-plus years as an hourly employee were not counted in computing retirement benefits for the years he was ineligible to participate in the Plan as an hourly employee, they were counted in satisfying the Plan's five-year vesting period for the years he was eligible to participate in the Plan as a salaried employee. *See* Part I.B. *infra.*

### B. The Plan

The Plan was first implemented in 1980. It was amended and restated in 1994 and again in 1997. The portions of the Plan pertinent to this appeal remain in substance unchanged over the years. *See* notes 4, 5 *infra.* They can be described in terms of the number of credited years of service as an employee in computing benefits, minimum participation/eligibility requirements, and minimum vesting standards.

"Employee" is defined in Section 1.19 of the Plan as "any person *who is employed by an Employer who is compensated by a weekly, monthly or annual salary, regardless of the number of hours worked....*" (Emphasis added.). Benefits are calculated based upon a participant's years of service. Years of service are defined in Section 1.40 of the Plan to mean "*a year or fraction of a year ... during which a Participant is or was an Employee* of the Company or a corporation or branch acquired by the Company...." (Emphasis added.).[4] A year of service is earned "for each calendar year in which [an Employee] is paid or entitled to payment for 1,000 hours by the Corporation."

An eligibility computation period is used to establish an employee's entitlement to participate in a qualified plan. Section 2.01 of the Plan, regarding minimum participation/eligibility standards,[5] states:

---

4. The 1980 SPD explained that "[t]he length of your Credited Service is used to determine the amount of your benefit ... Credited Service means the number of years and months (expressed as a fraction of a year) of Service as a salaried staff member of the Corporation." Years later, both the 1996 and the 1998 SPD explain that "the amount of an employee's benefit depends upon the length of Credited Service with the Company ... which is determined by months and years of service as a salaried employee."

5. Similarly, the Plan (implemented in 1980 and amended in 1994) described "Eligibility for Participation" as follows: "If you are a member of the salaried staff of a participating employer within the Corporation (that is, you are compensated by a weekly, monthly or annual salary), you will automatically be covered by the Plan on the first day of the month following the date you complete one year of service ...." The 1996 Summary Plan Description (SPD) explained "Eligibility and Participation" by stating that an employee is automatically a Participant in the Plan if the Employee is "a salaried employee of [UJB],

2.01 *Eligibility Requirements.*

An Employee who was a Participant in the Prior Plan on June 30, 1997, shall continue his participation thereafter if he continues to be employed by an Employer. Any other Employee shall commence participation in the Plan on the first day of the month following the latest of:

(a) his 21st birthday;

(b) his completion of one Year of Service; or

(c) the date his Employer adopts the Plan.

Each Employee shall automatically become a Participant immediately upon becoming eligible in accordance with the foregoing requirements, and shall continue as a Participant for as long as he is an Employee....

The second basic computation period is the vesting computation period. It is used to determine what portion of an employee's benefit is non-forfeitable at a given point in time.[6] Section 7.01 of the Plan required that after five years of service, an employee was 100% vested:[7]

7.01 *Vested Percentage of Accrued Benefit.*

Upon termination of his employment for any reason other than Retirement, a Participant shall be entitled to the following vested percentage of his accrued benefit:

| *Years of Service* | Vested Percentage |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |

The Plan in this appeal is what has commonly been referred to over the last thirty years as a "salaried-only plan." Such a plan covers salaried employees of Summit and its subsidiaries, who are age 21 and above, and, who have completed one year of service. By its terms, Summit hourly employees are not eligible to participate in the Plan. As stated, years of service as an hourly employee are counted for vesting purposes, but are not counted for participation purposes.

### C. *Procedural Background*

When Bauer was advised by Summit's benefit administrators that he was eligible to receive retirement benefits based upon only his 3.667 years of salaried service, he exercised his administrative rights under the Plan and appealed to its benefits committee. He requested benefits under the Plan retroactive to his original date of hire in 1977. The benefits committee denied his request and affirmed the initial denial of claimed benefits.[8]

---

age 21 or older, and completes one Year of Service with the Company with at least 1,000 of Hours of Service." The 1998 SPD stated that an employee is automatically a participant in the Retirement Plan if you are "a salaried employee of [Summit], age 21 or older ... and complete one Year of Service with at least 1,000 Hours of Service."

6. Vesting was described in both the 1996 and the 1998 SPD as "A non-forfeitable right to a benefit from the Plan [that] accrues when an employee completes five Years of Service, and an employee receives Vesting Service for each 12 month period, based on anniversary date, where the employee is paid for or entitled to payment for 1,000 Hours of Service."

7. An employee's benefit does not arise instantaneously upon his or her entry into a plan but accrues over time. The employer's annual contribution builds up each participants benefit over time. Benefit accrual is, thus, the successive accumulation of a final benefit due an employee upon retirement. *See* 26 U.S.C § 411(a)(7)(A); Treas. Reg. § 1.411(a)–7(a).

8. The denial letter stated in pertinent part:

The basic issue as the Committee viewed it is whether Mr. Bauer was properly excluded from participation in the Plan while he was an hourly, rather than salaried, employee and whether this exclusion is permissible under law. We reviewed the cita-

Bauer then filed a complaint in federal district court against Summit alleging that its Plan violated ERISA as it excluded hourly employees from participating. The district court disagreed. It granted Summit's motion for summary judgment and denied Bauer's cross-motion for summary judgment. This appeal follows.

## II. ISSUE ON APPEAL

Bauer raises only one issue on appeal: whether the district court erred in granting Summit's motion for summary judgment on the basis that the Plan did not violate ERISA when it included salaried employees, and excluded hourly employees, as eligible plan participants.

## III. STANDARD OF REVIEW

We exercise a plenary review of the grant by the district court of Summit's motion for summary judgment, using the same standards as employed by the district court initially. *See Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1009 (3d Cir.1997), *citing Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir.1995).

## IV. DISCUSSION

### A. *Introduction*

 Nothing in ERISA requires employers to establish employee benefits plans. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). Neither does it require that every employee is entitled to participate in a plan that it does decide to offer, for, as the Supreme Court, in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), stated: "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Id.* at 91, 103 S.Ct. 2890. What ERISA does require, however, is that if an employer decides to provide a plan, that plan is subject to certain minimum requirements regarding participation, funding and vesting standards. *Id. citing* 29 U.S.C. 1051–1086; *see also Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).[9]

The present ERISA litigation has arisen because Summit has excluded Bauer from participating in its Plan for the years he was employed on an hourly basis, affording

tions you submitted as the basis for your appeal ... The first citation, 29 U.S.C. [§] 1052(a)(1)(A)(ii) ... provides that a Plan may not impose [a] waiting period of more than one year for an otherwise eligible employee. *It does not have any bearing in determining which classes of employees are eligible.* Your second citation, 29 U.S.C. [§] 1052(a)(3)(A) ... provides that a "year of service" means a year in which at least 1000 hours are worked. *This also has no bearing on the ability of the Plan to exclude a class of employees, in this case hourly employees.* As you are aware, the Plan document, under Article I Definitions, 1.42 Year of Service incorporates the 1000 hour provision you cite. In calculating retirement benefits for Mr. Bauer the Plan did provide vesting service to Mr. Bauer for the years he worked over 1000 hours as an hourly employee. By doing so he became fully vested and was eligible for a benefit calculation. Such calculation, however, appropriately used his credited service for only those periods in which he was a salaried employee, and thus eligible to participate in the Plan (see Section 1.19 of the Plan).

(Emphasis added).

**9.** In *Alessi*, the Supreme court stated that "[t]o ensure that employee pension expectations are not defeated, [ERISA] establishes minimum rules for employee participation, §§ 1052–1062; funding standards to increase solvency of pension plans, §§ 1081–1085; fiduciary standards for plan managers, §§ 1101–1114; and an insurance program in case of plan termination, §§ 1341–1348 ....." 451 U.S. at 510 n.5, 101 S.Ct. 1895.

him benefits for only the 3.667 years he was employed on a salaried basis. Bauer claims that he is also entitled to participate in the Plan for each of his twenty-two years of employment. Bauer, in essence, asserts that he is entitled to benefit coverage although he is explicitly excluded by the terms of the plan itself. His cause of action arises under 29 U.S.C. § 1132.

### B. Statutory Analysis

#### 1. Recovery of Benefits

An action for benefits under an ERISA plan may be brought only by a participant in or beneficiary of an ERISA plan. 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1104(a)(1). Under ERISA, a "participant" is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). An employee is defined by ERISA as "any individual employed by an employer." 29 U.S.C. § 1002(6).

ERISA provides Bauer with a specific cause of action with which to challenge his denial of benefits. 29 U.S.C. § 1132. It authorizes a suit by a participant to recover benefits due under the terms of an ERISA plan or to enforce or clarify rights under the ERISA plan. 29 U.S.C. § 1132(a)(1)(B).[10]

A plaintiff must satisfy two requirements to establish participant status. See Wolf v. Coca–Cola Co., 200 F.3d 1337, 1340 (11th Cir.2000). First, the plaintiff must be a common law employee. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).[11] Second, the plaintiff must be, "according to the language of the plan itself, eligible to receive a benefit under the plan. An individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA." Id. citing Clark v. E.I. Dupont De Nemours & Co., Inc., No. 95–2845, 105 F.3d 646, 1997 WL 6958 (4th Cir. Jan. 9, 1997) (table).

We are required to enforce the Plan as written unless we find a provision of ERISA that contains a "contrary directive." See Bellas v. CBS, Inc., 221 F.3d 517, 522 (3d Cir.2000), cert. denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001); Dade v. North Am. Philips Corp., 68 F.3d 1558, 1562 (3d Cir.1995). The ERISA provision identified by Bauer in this appeal as a contrary directive is 29 U.S.C. § 1052(a).

#### 2. Minimum Participation Requirements under 29 U.S.C. § 1052(a)

The only limitation imposed by ERISA on any of the requirements for partic-

---

10. Alternatively, ERISA participants may seek equitable relief in connection with a benefits dispute to enjoin violations of ERISA or of the plan's terms or "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

11. In Nationwide Mutual, the Supreme Court ruled that, in the context of ERISA, the term "employee" means a common law employe, as opposed to an independent contractor, based on at least twelve factors. These factors include:

> ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Nationwide Mut. Ins. Co., 503 U.S. at 323–24 112 S.Ct. 1344.

ipation is entitled "Minimum Participation," and is set forth in 29 U.S.C. § 1052(a). It states: "No pension plan may require, as a condition of participation in the plan, that a employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—(i) the date on which the employee attains the age of 21; or (ii) the date on which he completes 1 year of service." 29 U.S.C. § 1052(a)(1)(A).

The section continues: "A plan shall be treated as not meeting the requirements of [29 U.S.C. § 1052(a)(1)] unless it provides that any employee who has satisfied the minimum age and service requirements specified in such paragraph, *and who is otherwise entitled to participate in the plan*, commences participation in the plan no later than the earlier of—(A) the first day of the first plan year beginning after the date on which such employee satisfied such requirements, or (B) the date 6 months after the date on which he satisfied such requirements...." 29 U.S.C. § 1052(a)(4) (emphasis added).

### 3. *Minimum Participation Standards and Internal Revenue Code Sections 410(a) and 401(a)*

■ We may look to the Internal Revenue Code to determine whether or not the ERISA section being construed has a "mirror-like counterpart." *See Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1144 (3d Cir.1993). Juxtaposed in the statute alongside the minimum participation standards of ERISA is Internal Revenue Code 410, 26 U.S.C. § 410, also entitled "Minimum Participation Standards." It states: "A trust shall not constitute a qualified trust under section 401(a) if the plan of which it is a part requires a condition of

participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—(i) the date on which the employee attains the age of 21; or (ii) the date on which he completes 1 year of service." 26 U.S.C. § 410(a)(1)(A). We then look to IRC § 401(a), 26 U.S.C. § 401(a), as directed.

IRC § 401(a)(5)(A) provides that "[a] classification shall not be considered discriminatory within the meaning of paragraph (4) [regarding contributions or benefits that discriminate in favor of highly compensated employees] or section 410(b)(2)(A)(i) [regarding minimum coverage requirements that discriminate in favor of highly compensated employees] *merely because it is limited to salaried or clerical employees*." (Emphasis added). A classification limiting plan coverage to salaried or clerical employees shall not, for that sole reason, be considered discriminatory. 26 U.S.C. § 401(a)(5)(A); Treas. Reg. § 1.401(a)(5)–1(b).[12]

### C. *Plan Classifications of Employees*

Neither party disputes that Bauer is a common law employee. He thus satisfies the first prong necessary to obtain participant status. *See Wolf*, 200 F.3d at 1340. We must turn, therefore, to an analysis of the second prong, that is, whether Bauer is an employee eligible for benefits under the terms of the Plan itself. *Id.*

### 1. *Contentions of the Parties*
#### a. *Introduction*

There has been considerable litigation involving salaried-only plans that exclude employees who are paid by the hour. Perhaps due to the clear language of the

---

**12.** *See* 29 U.S.C. § 1202(a) (which expressly incorporates into ERISA, regulations promulgated by the Department of the Treasury construing 26 U.S.C. § 410).

statute, 26 U.S.C. §§ 410(a)(1)(A) and 401(a)(5)(A), the case law has focused, not on whether the salaried-only plan classification was allowable under the statute, but whether it discriminated in favor of highly compensated employees (to the detriment of the excluded hourly workers) as it was applied.[13]

### b. Bauer's Argument Regarding Minimum Participation Standards under ERISA as applied to Salaried–Only Plan Classifications

Here Bauer does not contend that the hourly plan classification discriminates in favor of those who are highly compensated in application. Neither does he dispute that, under the express terms of the Summit plan, he is ineligible for benefits for the years he was classified as an hourly employee.

█ What Bauer alleges is that Summit's salaried-only Plan violates ERISA's minimum participation requirements, 29 U.S.C. § 1052(a)(1), by restricting its definition of an employee to those who were salaried. By not crediting his years of hourly employment, the Plan, Bauer argues, imposed an additional requirement not sanctioned by any statute or regulation.

Bauer claims that any employee, however compensated, who works 1,000 hours a year or more is entitled to pension benefits for that year. Bauer contends that, once an employee meets the minimum standard of participation, the latter of reaching age 21 or completing one year of service, he or she is eligible to participate, and Summit cannot impose a third requirement that an employee be salaried.[14]

Other than to cite 29 U.S.C. § 1052(a), Bauer does not point to any "contrary directive" in the ERISA statute that would forbid Summit to limit participation in its Plan to its salaried employees. *See Bellas*, 221 F.3d at 522. The case authority offered in support for Bauer's proposition is an unpublished, unreported, yet factually similar, case from the Southern District of New York. There the issue was raised on a motion to dismiss. *Ambris v. Bank of New York*, 1997 WL 107632 (S.D.N.Y. 1997).

In *Ambris*, the employee argued that the hourly classification functioned as an impermissible additional service requirement. In denying the defendant's motion to dismiss, the *Ambris* court heard no evidence, was limited to the four corners of

**13.** *See Cornell–Young Co. v. United States*, 469 F.2d 1318 (5th Cir.1972) (classifications of salaried and hourly employees excluded employee from participation, but the plan, as applied, discriminated in favor of members of prohibited group); *Wisconsin Nipple & Fabricating Corp v. Commissioner*, 67 T.C. 490, 1976 WL 3743 (1976), *aff'd*, 581 F.2d 1235 (7th Cir.1978) (where otherwise qualified plan discriminated in favor of prohibited group in application); *Babst Services, Inc. v. Commissioner*, 67 T.C. 131, 1976 WL 3634 (1976); *Liberty Machine Works, Inc. v. Commissioner*, 62 T.C. 621, 1974 WL 2697 (1974), *aff'd per curiam*, 518 F2d 554 (8th Cir.1975); *Ed & Jim Fleitz, Inc. v. Commissioner*, 50 T.C. 384, 1968 WL 1420 (1968); *Loevsky v. Commissioner*, 55 T.C 1144, 1971 WL 2537 (1971),

*aff'd per curiam*, 471 F.2d 1178 (3d Cir.1973) (otherwise qualified salaried–only plan discriminated in favor of prohibited group when it covered only 5% of the company's employees who were its officers, shareholders or supervisors, leaving the 96% hourly employees not covered under the plan).

**14.** While apparently, this is the first time that the use of statutory standards to provide benefit plan coverage has been argued in the context of hourly plans, there are a number of cases considering the same argument in the context of worker classifications such as freelancers/independent contractors, temporary employees and leased employees. *See* Part IV.C.2 *infra*.

the complaint, and owed deference to the plaintiff.

Even given this procedural setting, Bauer argues that *Ambris* is "sound and correctly reasoned" and that "its reasoning is grounded in basic principles of statutory and regulatory construction, *i.e.*, that what Congress says in a statute is what it means .... (citations omitted)."[15]

The district court in the Southern District of New York did not "reason" in *Ambris*. It merely found that, in ruling on a Rule 12(b)(6) motion, it did not appear that the plaintiff had not stated a claim upon which relief could be granted. *Ambris*, 1997 WL 107632 at *1. From a precedential standpoint, nothing more can be inferred. Unlike the case before us, the merits of the *Ambris* plaintiff's claim were never reached.[16]

#### c. Summit's Argument

Summit argues that 29 U.S.C. § 1052(a)'s minimum participation standards do not prevent an employer from denying an employee's participation in an ERISA plan as long as that exclusion is made on a basis *other than age* or length of service. Summit has consistently excluded non-salaried employees from participation. This exclusion is not premised upon an employee's age or length of service.

In support of its position, Summit cites *Lynn v. CSX Transp.*, 84 F.3d 970, 973–74 (7th Cir.1996) (plan limited participation to non-union, salaried employees, excluding hourly employees from coverage).[17] In addition, Summit contends that the district court correctly dismissed *Ambris* as unpersuasive.

#### 2. Recent ERISA Litigation Regarding Worker Classifications

Recent litigation regarding the use of statutory ERISA standards to provide benefit plan coverage to certain classifications of workers has centered upon freelancers/independent contractors, leased employees and temporary employees.

##### a. Freelancers, Agents or Other Independent Contractors

In *Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405 (10th Cir.1998), the Tenth Circuit upheld the denial of claims for benefits coverage sought by a class of newspaper carriers/delivery agents for the Kansas City Star newspaper. The class of plaintiffs had signed an agency agreement acknowledging that they were independent contractors, not employees, and therefore excluded from participation in the benefits

---

**15.** What Congress says is what it means expresses a valid rule of statutory construction. However, in 29 U.S.C. § 1052(a)(4), when Congress used the clause "... and who is otherwise entitled to participate in the plan ...," Congress is clearly saying the contrary of Bauers contentions.

**16.** The *Ambris* defendants' motion for summary judgment was granted a year–and–a–half later on statute of limitations grounds, a point never mentioned by Bauer.

**17.** In *Lynn*, the retired employee had worked for years on a contract basis, compensated at an hourly or daily rate of pay. The CSX retirement plan limited participation to em-

ployees paid on a monthly basis. Lynn claimed, as Bauer does now, that he should be considered a participant, for the twenty–plus years that he was a "contract worker," compensated on a daily or hourly basis. *Lynn*, 84 F.3d at 973. "Looking to the plain language of the plan documents," the district court agreed with the plan administrator's determination that Lynn was not entitled to participation status as an hourly employee. The Seventh Circuit affirmed. *Id.* Although we cannot determine that Lynn asserted the claim that 29 U.S.C § 1052(a) trumps all other plan exclusions, the facts of *Lynn* are indistinguishable from the facts of this case.

plan. The court, deferring to the terms of the ERISA plans, found that there was no dispute that the carriers had knowingly agreed to be excluded. *See also Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1439–1440 (7th Cir.1996) (where the Seventh Circuit found the plaintiffs were not common law employees as they had signed individual agreements designating themselves as independent contractors for all purposes).[18]

### b. Leased Employees

#### 1. The Fifth Circuit—Abraham

In *Abraham v. Exxon Corp.,* 85 F.3d 1126 (5th Cir.1996), individuals who worked as leased employees were specifically excluded under the terms of Exxon's plans. *Id.* at 1128. The plan administrator denied the plaintiffs' benefit claims on this basis. The Fifth Circuit affirmed the district court's grant of summary judgment for Exxon. The court concluded that the minimum participation requirements of ERISA § 1052(a) did not preclude an employer from denying participation in an ERISA plan *if the employer does so for reasons other than age or length of service,* stating:

> Section 1052(a) does nothing more than forbid employers to deny participation in an ERISA plan to an employee on the basis of age or length of service if he is at least twenty-one years of age and has completed at least one year of service. Section 1052(a) does not prevent employers from denying participation in an ERISA plan *if the employer does so on a basis other than age or length of service.*

*Id.* at 1130 (emphasis added).[19]

Similar results were reached by the Fourth Circuit in *Clark v. E.I. Dupont De Nemours and Co.,* 1997 WL 6958, 105 F.3d 646 (4th Cir. Jan. 9, 1997) (table), the Tenth Circuit in *Bronk v. Mountain States Tel. & Tel., Inc.,* 140 F.3d 1335 (10th Cir.

---

**18.** To the contrary, in *Vizcaino v. Microsoft Corp.,* 120 F.3d 1006 (9th Cir.1997) (en banc), a class action was brought by eight "freelancers" seeking to participate in Microsoft's retirement plans although they had previously waived plan benefit coverage and agreed to non–employee status. The class was paid via invoices submitted to the accounts payable department as independent contractors, rather that through the payroll department as employees. *Id.* at 1009–13.

The Ninth Circuit, construing a perceived plan ambiguity against Microsoft, held that the group satisfied the first prong of participant status, as the freelancers were actually common law employees and entitled to retroactively participate in one of the plans that covered "all employees." *Id.* at 1013. It remanded for a limited determination of the second prong, whether of not the freelancers were, under the restrictive terms of the plan, "on the United States payroll of the employer." *Id.*

**19.** The *Abraham* court rejected outright as incorrect the analysis used as to leased employees by the district court in *Renda v. Adam*

*Meldrum & Anderson Co.,* 806 F.Supp. 1071 (W.D.N.Y.1992). There the *Renda* district court found that the leased employee was an employee who had met the minimum participation requirements of 29 U.S.C. § 1052(a) merely because she was over the age of twenty-one and had completed one year of service. The Western District of New York district court found she was a participant entitled to benefits under 29 U.S.C. § 1132(e). *See also Crouch v. Mo–Kan Iron Worker Pension Fund,* 740 F.2d 805 (10th Cir.1984) (involving excluded union employee).

We do not follow *Renda* or *Crouch.* Unless a plan violates ERISA, judicial amendments are not authorized. *See also Burrey v. Pacific Gas & Elec. Co.,* 159 F.3d 388 (9th Cir.1998) (distinguishing *Abraham* as the question was not whether the employer could bar a leased employee from participating in its ERISA plan, but whether the plaintiffs qualified as common law employees under IRC § 4145(n)).

1998), and the Eleventh Circuit in *Wolf v. Coca-Cola,* 200 F.3d 1337 (11th Cir.2000).

### 2. The Fourth Circuit—Clark

In *Clark,* the Fourth Circuit found that neither the minimum participation requirements of ERISA, nor the tax provisions requiring that leased employees be counted in determining whether the plan met ERISA's non-discrimination requirements, were sufficient authority to mandate that leased employees be included in the company's plan. *Clark,* 1997 WL 6958 at **4. The Fourth Circuit specifically held that an employer may exclude some categories of employees from participation in ERISA plans, provided that the plan distinguishes among employees *based upon factors other than age or length of service. Id.* (emphasis added).

### 3. The Tenth Circuit—Bronk

*Bronk* also rejected statutory grounds for determining benefit program eligibility. In succinct language, the Tenth Circuit disagreed with the district court that ERISA's minimum participation standards *required* that leased employees who met the test for common law employee status be *automatically* included in the company's plan, whether or not they were excluded under the terms of the plan. *Bronk,* 140 F.3d at 1338. The Tenth Circuit emphasized, while that plans could not discriminate based upon age or length of service, the employer "need not include in its pension plans all employees who meet the test of common law employees." *Id.*

As statutory support for this conclusion, the Tenth Circuit cited the language found in 29 U.S.C. § 1052(a)(4), referring to employees who were "otherwise entitled to participate in the plan." *See* Part IV.B.2 and note 17 *supra.* It concluded that this language "would be superfluous unless Congress intended that plans could impose other participation requirements besides age or length of service." *Id.* at 1338. We agree.

### 4. The Eleventh Circuit—Wolf

Most recently, the Eleventh Circuit in *Wolf* followed the rationale of *Abraham, Bronk* and *Clark.* It held that while a computer programmer and analyst, leased by Coca-Cola from an independent staffing company, may have a legitimate argument that she was a Coca-Cola common law employee under the first prong of the participant status test, she was nevertheless not entitled to benefits under the second prong, the terms of Coca-Cola's plan itself. *Wolf,* 200 F.3d at 1339.

### D. The Present Case

Bauer's novel argument has apparently never been resolved specifically in the context of salaried-only plans. *See Lynn,* 84 F.3d at 973–74 (discussed in note 18 *supra*). His argument is unsupported by any authority other than an unpublished case from the Southern District of New York involving a motion to dismiss, *see Ambris,* 1997 WL 107632 at *1, and Bauer's isolation of 29 U.S.C. § 1052(a) from the rest of ERISA. Neither has Bauer cited to any contrary directive in ERISA that forbids Summit to exclude hourly employees from the Plan. *See Bellas,* 221 F.3d at 522.

As the benefits committee denial letter to Bauer originally stated:

"The first citation [provided to the committee by Bauer], 29 U.S.C. § 1052(a)(1)(A)(ii) ... provides that a Plan may not impose [a] waiting period of more than one year for an otherwise eligible employee. *It does not have any bearing in determining which classes of employees are eligible.* Your second citation, 29 U.S.C. § 1052(a)(3)(A) ... provides that a 'year of service' means a

year in which at least 1000 hours are worked. *This also has no bearing on the ability of the Plan to exclude a class of employees, in this case hourly employees.*" (Emphasis added).

Summit had no duty to create the Plan in this case. *See Shaw,* 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). It also had no duty to provide benefits to every employee. *Id.* Summit could limit plan participation to certain groups or classifications of employees, as long as that limitation was not based upon age or length of service.[20] 29 U.S.C. § 1052(a)(4); 26 U.S.C. §§ 410(a), 401(a)(5).

We consider the case law considering leased employees as analogous to the case before us and align our reasoning with that of the Fourth, Fifth, Tenth and Eleventh Circuits, following the logic set forth in *Clark, Abraham, Bronk* and *Wolf. See Clark,* 1997 WL 6958 at *4; *Abraham,* 85 F.3d at 1130; *Bronk,* 140 F.3d at 1335; *Wolf* 200 F.3d at 1339. Barring a contrary directive, we are required to enforce the Plan as written, as our judicial amendment is not authorized.

## V. CONCLUSION

The judgment of the district court is affirmed.

---

20. Examples of legitimate exclusions may include employees who are hourly; those who are leased; those who are part–timed; or those who are independent contractors. In fact, an employer could even exclude all persons whose names begin with the letter "H," as long as this was not deemed to be discriminatory in application.