Ronald R. **EDES,** Kevin Lyons, and John Parsons, Plaintiffs,

v.

**VERIZON COMMUNICATIONS, INC., et al., Defendants.**

**No. CIV.A.01–011742–PBS.**

United States District Court, D. Massachusetts.

July 25, 2003.

Michael M. McArdle, Munroe and McArdle, Marblehead, MA, Earl D. Munroe, Munroe and Chew, Salem, MA, for Plaintiffs.

Sara L. Govotti, Jeffrey G. Huvelle, Covington & Burling, Washington, DC, Matthew L. Lunenfeld, Douglas K. Mansfield, Casner & Edwards, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## INTRODUCTION

Plaintiffs bring this proposed class action alleging that their former employer, defendant Verizon Communications, Inc. (previously GTE, Inc.), interfered with plaintiffs' rights to participate in various employee benefit plans in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") as well as state common law.[1] Defendants assert that plaintiffs were temporary employees who were ineligible for participation in GTE's employee benefits plans, and have moved to dismiss the complaint. After hearing and several rounds of briefing, the defendants' motion to dismiss is *ALLOWED*.

## BACKGROUND

The complaint alleges the following facts:

Plaintiffs each began working at GTE Services Corporation, a division of GTE, in April 1994. Each plaintiff was interviewed and hired directly by GTE managers at GTE's place of business, but was instructed upon his hiring to sign on with an independent temporary payroll agency.

Throughout their employment plaintiffs received paychecks only from two temporary payroll agencies—FISC, Inc. and Benetemps, Inc.—and did not receive any salary or employee benefits directly from GTE. Otherwise, plaintiffs were indistinguishable from GTE's other employees. They received all their training and evaluations from GTE management, participated in peer review programs with other GTE employees, served on in-house committees, had authority to compose and sign letters on GTE letterhead, possessed office keys, shared internal e-mail and telephone listings, were invited to GTE company-sponsored functions, including picnics and Christmas parties, and were instructed by GTE management to identify themselves to outsiders as GTE employees and not as "temporary employees."

At all relevant times, GTE divided workers into at least two different groups for the purpose of determining eligibility for participation in GTE's employee benefit plans. The first group was comprised of "regular" employees, including full and part-time staff, who were paid directly by GTE and were eligible to participate in the benefit plans. The second group included, among other "special status" employees, "seasonal," "leased" and "temporary" workers who were not paid directly by GTE. The latter group was *not* eligible for participation in defendants' employee benefit plans. Because they did not receive their paychecks directly from GTE, plain-

---

1. Plaintiffs Ronald R. Edes, Kevin Lyons, and John Parsons allege seven claims: (1) benefits due to them under the terms of defendants' plans (Complaint ¶ 7.1); (2) discrimination in the classification of plaintiffs as ineligible for participation in defendants' plans, in violation of ERISA §§ 5, 10, 29 U.S.C. § 1140 (¶ 7.2); (3) violation of defendants' fiduciary duties owed to plaintiffs under the plans pursuant to ERISA § 404, 29 U.S.C. § 1104 (¶ 7.3); (4) a structural defect in the design of defendants' ERISA plans (¶ 7.4); (5) a violation of ERISA's minimum participation standards (¶ 7.5); (6) a violation of ERISA §§ 202, 402, 29 U.S.C. §§ 1052, 1102, requiring that ERISA plans incorporate eligibility and coverage requirements in objective terms in the plans themselves (¶ 7.6); and (7) a violation of defendants' common law duty to properly classify plaintiffs with respect to their eligibility to participate in employee benefit plans (¶ 7.7).

tiffs were deemed ineligible for participation in any GTE benefits programs, and plaintiffs never received any such benefits from defendants during their tenure with the company.

Plaintiffs Edes and Lyons discontinued their employment at GTE on December 31, 1998, and plaintiff Parsons discontinued his employment in August of 1998, when GTE closed its facility in Danvers. On May 3, 1999 the plaintiffs, after each of them had left GTE, made their first demand for benefits to the Human Resources Department of GTE. By letter GTE denied that plaintiffs were eligible for benefits. Defendants offered the plaintiffs no administrative review of the denial. On October 10, 2001, plaintiffs filed this action.

## LEGAL ANALYSIS

### I. Motion to Dismiss Standard

For purposes of this motion, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in [her] favor." *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992) (citing *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not be dismissed under Fed. R.Civ.P. 12(b)(6) unless " 'it appears beyond doubt that the plaintiff can prove no

set of facts in support of [her] claim which would entitle [her] to relief.' " *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. The ERISA Claims

#### A. Benefits Due Under the Terms of the Plans (¶ 7.1) [2]

■ Plaintiffs claim they are plan participants eligible to recover benefits due to them under the terms of the ERISA plans.[3] *See* 29 U.S.C. § 1132(a)(1)(B). The GTE Savings Plan states that the term "Eligible Employee ... shall not include ... an individual whose basic compensation for services rendered on behalf of the Company or a Participating Affiliate is not paid directly by the Company or an Affiliate." The plan also excluded other categories of workers like leased employees. The submitted documents for the other plans similarly exclude employees not paid "directly" by the defendants.[4] Thus, by the terms of the plans, plaintiffs are not entitled to benefits because they are not paid directly by GTE, but instead are paid by temporary payroll agencies.

■ The fact that plaintiffs may be common law employees is not by itself enough

**2.** Plaintiffs improperly assert claims pursuant to ERISA § 502(a)(2) and § 502(a)(5), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(5). However, plaintiffs' briefs make clear that they assert their claims for benefits due to them under the terms of the plans pursuant to § 502(a)(1)(B). Because all parties briefed the claim under this section, the Court will move to the merits.

**3.** The complaint contends that plaintiffs were denied participation in the following benefit plans: (1) GTE Employee Savings Plan; (2) GTE Employees Medical Plans; (3) GTE Employees Dental Plans; (4) GTE Plan for Group Insurance Long Term Disability In-

come Protection Plan (the "LTD Plan"); (5) GTE Retirement Income Plans; (6) GTE Tuition Reimbursement Plan; (7) GTE Matching Contribution to Education Plan; and (8) GTE John Doe Unknown Plans 1—10.

**4.** The parties have still not submitted any documents to the Court concerning plaintiffs' allegations of eligibility to participate in GTE Retirement Income Plans, GTE Tuition Reimbursement Plan, or the GTE Matching Contribution to Education Plan. While plaintiffs complain that all plan documents have not been submitted, they do not file a motion to compel pursuant to Fed.R.Civ.P. 37(a).

to state a valid claim for benefits under ERISA. *See Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1340 (11th Cir.2000) (holding that to maintain an action to recover ERISA benefits, a plaintiff must establish that (1) she is an employee of the employer and (2) she meets all the participation requirements contained in the ERISA plan). "The plaintiff must be eligible for benefits under the terms of the plan itself. This requirement is necessary because companies are not required by ERISA to make their ERISA plans available to all common law employees." *Id.Accord Bauer v. Summit Bancorp,* 325 F.3d 155, 161, 166 (3d Cir.2003) (holding that to succeed on ERISA claim plaintiffs must show both that they are employees and that they are eligible for participation under terms of the plans); *Bronk v. Mountain States Tel. & Tel., Inc.,* 140 F.3d 1335, 1338 (10th Cir.1998) (same); *Abraham v. Exxon Corp.,* 85 F.3d 1126, 1129–30 (5th Cir.1996) (same); *Jaeger v. Matrix Essentials, Inc.,* 236 F.Supp.2d 815, 825 (N.D.Ohio 2002) (finding defendant not obligated to make ERISA plans available to all common law employees); *cf. Vizcaino v. Microsoft,* 120 F.3d 1006, 1009–10 (9th Cir.1997) (holding that common law employees payrolled through temporary agencies were eligible employees under the terms of the Microsoft plans).

### B. Interference Claim Under 29 U.S.C. § 1140 (¶ 7.2)

■ Plaintiffs claim that defendants mis-classified them as "indirectly" paid employees for the purpose of interfering with plaintiffs' attainment of ERISA rights, in violation of ERISA, § 510, 29 U.S.C. § 1140. That section provides that

> It shall be unlawful for any person to ... discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become

entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. Section 510 prohibits interfering with employment arrangements for the purpose of depriving an employee of employee benefits that would otherwise be owed to her. *See Benham v. Lenox Sav. Bank,* 292 F.3d 46, 47 (1st Cir.2002); *Sandberg v. KPMG Peat Marwick, L.L.P.,* 111 F.3d 331, 334 (2d Cir. 1997).

Plaintiffs' § 510 argument fails for two reasons. First, an employer may hire employees under terms that render them ineligible to receive benefits given to other employees without violating § 510. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (ERISA does not mandate that employers provide any particular benefits and does not itself proscribe discrimination in the provision of employee benefits); *Becker v. Mack Trucks, Inc.,* 281 F.3d 372, 380–383 (3d Cir.2002) (holding that § 510 does not apply to hiring and rehiring decisions); *Williams v. American Int'l Group, Inc.,* 01–CIV–9673–CSH, 2002 WL 31115184, at *2 (S.D.N.Y. Sept. 23, 2002) (citing *Becker* and rejecting claim that assigning a plaintiff to temporary status is discrimination within the meaning of § 510).

■ Second, plaintiffs' § 510 claim is time-barred. The Massachusetts three-year limitations period for torts, Mass. Gen. Laws ch. 260, § 2A, applies to actions under ERISA § 510. *See Muldoon v. C.J. Muldoon & Sons,* 278 F.3d 31, 32 (1st Cir.2002). The statute of limitations clock began on plaintiffs' claim when plaintiffs were hired in April 1994 and classified as employees of a temporary payroll agency instead of as regular employees of GTE. *See Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1140–41 (7th Cir.1992) ("[I]t is the

[employment] decision and the participant's discovery of this decision that dictates accrual."); *Berry v. Allstate Ins. Co.,* 252 F.Supp.2d 336, 342 (E.D.Tex.2003) (holding that the statute of limitations for a § 510 claim begins to run when the discriminatory decision is made and communicated to the plaintiff and rejecting continuing violation theory to extend the statute of limitations); *Potter v. ICI Americas Inc.,* 103 F.Supp.2d 1062, 1073 (S.D.Ind.1999) (holding that "it is the adverse employment decision, that is, the change in employment status that indicates that the employer may be discriminating against a plaintiff's ability to collect benefits, that starts the clock ticking, *not* when a plaintiff is ultimately denied those benefits.") (emphasis in original); *Bolduc v. National Semiconductor Corp.,* 35 F.Supp.2d 106, 119–20 (D.Me.1998) (holding that ERISA claim accrued when plaintiff "was aware that he would not receive benefits by virtue of his independent contractor status even though he worked in the same position as other employees who received these benefits."); *Williams,* 2002 WL 31115184, at *5 (where plaintiff claimed her relegation to "temporary" status constituted § 510 violation, the cause of action accrued "at the instance whereupon the status was decided."). The fact that plaintiffs did not realize their injuries were actionable does not affect the date of accrual. *See Martin v. Consultants & Admin. Inc.,* 966 F.2d 1078, 1086 (7th Cir. 1992) (noting that the "discovery" rule relates to the discovery of the harm and not the discovery of the legal theory through which the harm might be redressed).

To elude the statute of limitations guillotine, plaintiffs argue that an administrative exhaustion requirement attaches to § 510 claims and that the cause of action on their § 510 claim did not accrue until after their application for benefits was formally denied on September 8, 1999. The circuit courts of appeal are divided on the question of whether or not § 510 claims contain an administrative exhaustion requirement. *Compare Smith v. Sydnor,* 184 F.3d 356, 364–65 (4th Cir.1999) (administrative exhaustion not required for § 510 claims); *Zipf v. American Tel. & Tel. Co.,* 799 F.2d 889, 891–93 (3d Cir.1986) (same); *Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir.1984) (same); and *Watts v. BellSouth Telecomm., Inc.,* 316 F.3d 1203, 1204 (11th Cir.2003) (administrative exhaustion not required where claimant reasonably interprets summary plan language "as meaning that she could go straight to court with her claim"), *with Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1226–27 (11th Cir.1985) (exhaustion required for all ERISA claims); *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir.1996) (exhaustion requirement is within discretion of the court), and *Fritcher v. Health Care Service Corp.,* 301 F.3d 811, 815 n. 3 (7th Cir.2002) (same).

The First Circuit has not ruled on this issue, and the district courts in the circuit are split. *Compare Treadwell v. John Hancock Mutual Life Ins. Co.,* 666 F.Supp. 278, 284 (D.Mass.1987) (holding plaintiff is not required to exhaust pension plan remedies before bringing his § 510 action to court); *Morales–Cotte v. Cooperativa de Ahorro y Credito Yabucoena,* 73 F.Supp.2d 153, 160 (D.P.R.1999) (same); *Alexander v. Fujitsu Bus. Comm. Sys., Inc.,* 818 F.Supp. 462, 471 (D.N.H.1993) (same); *United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co.,* 777 F.Supp. 1010, 1018 (D.Me.1991) (same), *with Santana v. Deluxe Corp.,* 12 F.Supp.2d 162, 174 (D.Mass.1998) ("[T]his Court agrees with the Seventh and the Eleventh Circuits that strong public policy reasons— most prominently to render meaningful the Congressional mandate that all ERISA plans include an appeal process—compel

plaintiffs to exhaust all benefit denial claims, regardless of their nature.").

But even if there were an exhaustion requirement, traditional exhaustion principles provide an exception when the use of administrative remedies is futile or the remedy inadequate. *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988) (citations omitted).

Here there is no evidence that exhaustion of § 510 claims is required in the plans, and the allegations in the complaint indicate that exhaustion was futile and that no remedies existed. Moreover, even if exhaustion were required, plaintiffs waited *five years* to seek an administrative remedy. Accordingly, the Court concludes that the cause of action accrued when plaintiffs were hired and received their paycheck from a temporary agency.

### C. Breach of Fiduciary Duty (¶¶ 7.3, 7.4)

Plaintiffs allege that the plan fiduciary breached its duty by negligently or intentionally mis-designating plaintiffs' employment status as "non-employees" and by arbitrarily classifying certain employees to be paid through a third-party agency rather than through defendants' own payroll department, in violation of ERISA § 404, 29 U.S.C. § 1104. Defendants argue this claim is time-barred under ERISA § 413, 29 U.S.C. § 1113, which provides that:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the *earlier* of -

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added). ERISA thus provides that "claims based on a breach of fiduciary duty must be brought within six years of the 'latest date on which the fiduciary could have cured the breach or violation,' *and* within three years of the date on which the plaintiff had actual knowledge of the breach." *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 117 (1st Cir.2002) (emphasis in original).

Defendants assert that plaintiffs obtained "actual knowledge" of any alleged mis-classification in violation of fiduciary duty (¶ 7.3), or any structural defect in the plan implicating fiduciary duty (¶ 7.4), in 1994, when they were hired, and when they first received paychecks from the temporary payroll agencies instead of from GTE. As discussed above, plaintiffs did have actual knowledge of their status in 1994, yet failed to commence their case until 2001. The fact that this was a continuing breach does not extend the statute of limitations under a continuing violations theory. *Phillips v. Alaska Hotel and Rest. Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir.1991) (finding that if a series of "breaches are of the same kind and nature and the plaintiff had actual knowledge of one of them more than three years before commencing suit, § 1113(a)(2) bars the action"); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (declining to apply continuing violations theory in ERISA case regarding con-

tinuing denial of monthly benefits); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 203 (D.Del.2000) (finding that the test for whether subsequent acts fall under the continuing violations theory is "whether each overt act results in a new injury to the plaintiff"); *Arakelian v. Nat'l W. Life Ins. Co.*, 680 F.Supp. 400, 403 (D.D.C.1987) (continuing violations do not toll the statute of limitations). The defendants' motion to dismiss plaintiffs' breach of fiduciary duty claim is *ALLOWED*.

## D. Structural Defect Argument

 Plaintiffs argue that the plans violate ERISA § 202, 29 U.S.C. § 1052(a), which describes "Minimum Participation Standards" for ERISA plans. Courts are required to enforce ERISA plans as written unless the plans contravene a requirement in ERISA. *See Bauer v. Summit Bancorp*, 325 F.3d 155, 160 (3d Cir.2003). The only limitation imposed by ERISA on requirements for participation are those standards. *Id.* ERISA § 202(a)(1)(A) states:

> No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—
>
> (i) the date on which the employee attains the age of 21; or
>
> (ii) the date on which he completes 1 year of service.

29 U.S.C. § 1052(a)(1)(A).

Section 202(a)(4) provides:

> A plan shall be treated as not meeting the requirements of paragraph (1) unless it provides that any employee who

has satisfied the minimum age and service requirements specified in such paragraph, *and who is otherwise entitled to participate in the plan,* commences participation in the plan no later than the earlier of-

> (A) the first day of the first plan year beginning after the date on which such employee satisfied such requirements, or
>
> (B) the date 6 months after the date on which he satisfied such requirements, unless such employee was separated from the service before the date referred to in subparagraph (A) or (B), whichever is applicable.

29 U.S.C. § 1052(a)(4) (emphasis added).

Although the terms of the plan explicitly exclude plaintiffs, they nevertheless seek to rely on treasury regulations, 26 C.F.R § 410, which govern qualifications for preferred tax treatment of benefit plans, to support their structural defect claim.[5] Two such regulations are of potential relevance here. 26 C.F.R. § 1.410(a)–3(d) explains that:

> (d) Section 410(a), § 1.410(a)–4, and this section relate solely to age and service conditions *and do not preclude a plan from establishing conditions, other than conditions relating to age or service, which must be satisfied by plan participants.* For example, such provisions would not preclude a qualified plan from requiring, as a condition of participation, that an employee be employed within a specified job classification. See section 410(b) and the regulations thereunder for rules with respect to coverage of employees under qualified plans.

*Id.* (emphasis added).

Plaintiffs concede that the plan meets the minimum participation requirements

**5.** These regulations are explicitly incorporated into ERISA itself by 29 U.S.C. § 1202(c) ("Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 ... shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter.").

as described by this regulation. However, plaintiffs argue that treasury regulation 26 C.F.R. § 1.410(b)–4(b) requires job classifications to be reasonable:

> *b) Reasonable classification established by the employer.* A classification is established by the employer in accordance with this paragraph (b) if and only if, based on all the facts and circumstances, the classification is reasonable and is established under objective business criteria that identify the category of employees who benefit under the plan. Reasonable classifications generally include specified job categories, nature of compensation (i.e., salaried or hourly), geographic location, and similar bona fide business criteria. An enumeration of employees by name or other specific criteria having substantially the same effect as an enumeration by name is not considered a reasonable classification.

Plaintiffs argue that defendants have failed to meet the standards prescribed by this regulation because GTE has not categorized its employees as eligible or ineligible for its ERISA plans pursuant to any "reasonable" standards or "objective business criteria." 26 C.F.R. § 1.410(b)–4(b). GTE's practice of permitting only those on GTE's actual payroll to participate in their plan, and then arbitrarily assigning some employees to register with a temporary payroll agency instead of being counted on GTE's payroll, cannot be considered, they argue, a reasonable classification under 26 C.F.R. § 1.410(b). Hence, they argue the plan is structurally flawed.

Most courts have rejected the argument that the treasury regulations create a right to rewrite an ERISA plan. In *Abraham v. Exxon Corp.,* 85 F.3d 1126, 1131 (5th Cir. 1996), the Fifth Circuit, confronted with the same argument plaintiffs press here, held:

We read the function of Treasury regulations more narrowly. The regulations purport to do no more than determine whether a plan is a qualified tax plan. Failure to meet the requirements of those regulations results in the loss of a beneficial tax status; it does not permit a court to rewrite the plan to include additional employees. The Treasury regulations do not create substantive rights under ERISA that would permit the relief Abraham requests. It is true that ERISA does incorporate portions of the Internal Revenue Code and Treasury regulations, in some instances, but on those occasions it does so explicitly. *See* 29 U.S.C. § 1202(c) (expressly incorporating Treasury regulations promulgated under 26 U.S.C. §§ 410(a), 411, & 412).

*Accord Bronk v. Mountain States Tel. & Tel., Inc.,* 140 F.3d 1335, 1338 (10th Cir. 1998) (rejecting argument that treasury regulations require leased employees to be covered by benefit plans); *Montesano v. Xerox Corp., et. al.,* 117 F.Supp.2d 147, 162 (D.Conn.2000) (citing *Abraham* and rejecting argument that treasury regulations create substantive ERISA rights), *aff'd in relevant part,* 256 F.3d 86, 89 (2d Cir. 2001); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."). *But see Renda v. Adam Meldrum & Anderson Co.,* 806 F.Supp. 1071, 1083 (W.D.N.Y.1992) (holding that the "regulations are not to be implemented only for the narrow purpose of determining tax qualification. They are useful for extracting subtler shades of meaning necessary to paint a more detailed portrait of an individual's substantive rights under ERISA.").

While GTE's classification may well be unreasonable and arbitrary under the Treasury regulations, under *Abraham* and *Bronk* this failure to comply with the tax regulations does not permit the Court to rewrite the plan. Defendants' motion to dismiss plaintiffs' claims in paragraphs 7.4 and 7.5 of the complaint concerning alleged structural flaws in defendants' plans is *ALLOWED*.

### E. Failure to Administer the Plans According to "Objective Criteria." (¶ 7.6)

 Plaintiffs allege that defendants have failed to administer the plans according to "objective criteria," in violation of ERISA §§ 202, 402, 29 U.S.C. §§ 1052, 1102, because the operative documents for determining eligibility for participation in GTE's plans are not the plan documents themselves, but outside-the-plan lists of temporary or regular employees. The statute requires that every plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). This claim fails because the plan documents specify "objective criteria" for eligibility: whether or not employees are paid directly by GTE.

### F. State Law Claim

Plaintiffs' common law claim is preempted by ERISA. 29 U.S.C. § 1144(a); *Shaw*, 463 U.S. at 91, 103 S.Ct. 2890.

### ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket 9) is *ALLOWED*.