# United States Court of Appeals
## For the First Circuit

No. 03-2162

RONALD R. EDES, KEVIN LYONS, JOHN PARSONS,

Plaintiffs, Appellants,

v.

VERIZON COMMUNICATIONS, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE U.S. DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Lynch, and Lipez, Circuit Judges.

Shannon Liss-Riordan, with whom Earl D. Munroe, Munroe & Chew, Michael M. McArdle, and Law Offices of Michael M. McArdle were on brief, for appellant.
Jeffrey G. Huvelle, with whom Frederick G. Sandstrom, Covington & Burling, Marc Schoenecker, and Verizon Services Group were on brief, for appellee.

August 2, 2005

**LIPEZ**, **Circuit Judge**.  Plaintiffs-appellants Ronald R. Edes, Kevin Lyons, and John Parsons appeal the dismissal of their claims against Defendants-appellees Verizon Communications, Inc., et al., under the Employee Retirement Income Security Act of 1974, 29 U.S.C § 1001-1461, as amended ("ERISA").  Plaintiffs allege that Defendants violated ERISA by relegating them to the payrolls of third-party payroll agencies, thereby: (1) wrongfully denying them benefits under ERISA plans; (2) interfering with their attainment of plan participation rights; (3) breaching fiduciary duties owed to them; (4) failing to meet ERISA's minimum participation standards; and (5) using arbitrary, unwritten plan eligibility criteria.  We affirm the district court's decision to dismiss each of these claims pursuant to Fed. R. Civ. P. 12(b)(6).

## I.

As alleged in the complaint, Plaintiffs were hired by GTE Service Corporation ("GTE"), a business unit of GTE Corporation (now Verizon Communications, Inc.), to work in its Danvers, Massachusetts, office in or around April 1994.  Although Plaintiffs were hired directly by GTE, each was told to sign on with one of two independent payroll agencies, FISC Inc. or BeneTemps Inc., who issued Plaintiffs' paychecks during the entire period of their employment with GTE.  Plaintiffs received no paychecks or benefits from GTE during their tenure.  In all other respects, Plaintiffs were treated like "regular," full-time GTE employees.  In

-2-

particular, Plaintiffs received the same training, performance reviews, and access to GTE facilities as other employees; were invited to corporate functions, staff meetings, and committee service just as other employees were; and were explicitly instructed to identify themselves to outsiders as "GTE employees" rather than as temporary employees. In short, according to the complaint, Plaintiffs were "thoroughly integrated in GTE's workforce."

In August 1998, GTE terminated Parsons' employment in preparation for closing the Danvers facility. In December 1998, GTE terminated Edes' and Lyons' employment. On May 3, 1999, Plaintiffs made demands for ERISA plan benefits on the GTE Human Resources Department. GTE denied the claims on September 8, 1999 on the ground that Plaintiffs had not been employed by GTE, and offered Plaintiffs no administrative review options.

On October 10, 2001, Plaintiffs filed a putative class-action complaint in federal district court against Verizon Communications, Inc. (formerly GTE Corporation), seven named GTE ERISA benefits plans and their administrators and fiduciaries,[1] and "GTE John Doe Unknown Plans 1 - 10." Plaintiffs alleged, on information and belief, that because eligibility to participate in

---

[1]The named plans include: GTE Employee Savings Plan, GTE Employees Medical Plans, GTE Employees Dental Plans, GTE Retirement Income Plans, GTE Tuition Reimbursement Plan, GTE Matching Contribution to Education Plan, and GTE Plan for Group Insurance Long Term Disability Income Protection Plan.

GTE's ERISA plans was "expressly limited to employees who were paid directly by a participating business unit," Defendants had violated their rights under ERISA and state common law.

On February 20, 2002, Defendants moved to dismiss each of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing, inter alia, that their claims of interference with attainment of participation rights and breach of fiduciary duty were time-barred and their state common-law claim preempted. After a hearing on the motion, the court stayed discovery but did not stay automatic disclosure, noting that Defendants had yet to disclose the plans' actual language. On September 19, 2002, the court issued an order denying Defendants' motion to dismiss without prejudice to its renewal "once the precise language of the terms of eligibility is produced." In October 2002, Defendants submitted an attorney declaration with exhibits stating that they had disclosed plan documents to Plaintiffs in May and June 2002. After the court permitted Plaintiffs to take a deposition to determine when the relevant eligibility criteria had been included in GTE's ERISA plans, Defendants filed a memorandum in further support of their motion to dismiss in January 2003. Plaintiffs filed a memorandum in further opposition to the motion.[2]

---

[2]In their memorandum, Plaintiffs protested that Defendants had disclosed only one plan (the GTE Savings Plan), and only summary plan descriptions of the other GTE ERISA plans. As the district court noted, "[w]hile plaintiffs complain that all plan documents have not been submitted, they [did] not file a motion to compel

-4-

On July 25, 2003, the district court issued a memorandum and order granting Defendants' motion to dismiss the complaint. The court held that Plaintiffs' claims of interference with plan participation rights and breach of fiduciary duty were time-barred and that their state common-law claim was preempted by ERISA. Edes v. Verizon Communications, Inc., 288 F. Supp. 2d 55, 59, 61-62, 64 (D. Mass. 2003). The district court also concluded that Plaintiffs otherwise failed to state claims for which relief could be granted. Id. at 58-59, 64. Plaintiffs timely appealed.[3]

## II.

We review de novo a district court's decision to dismiss a complaint pursuant to Rule 12(b)(6), "accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000). A "complaint is properly dismissed only when the allegations are such that 'the plaintiff can prove no set of facts to support [the] claim for relief.'" Id. (quoting Rockwell v. Cape Cod Hosp., 26 F.3d 254, 260 (1st Cir. 1994)). "Granting a motion to dismiss based on a limitations

---

[disclosure] pursuant to Fed. R. Civ. P. 37(a)." Edes v. Verizon Communications, Inc., 288 F. Supp. 2d 55, 58 n.4 (D. Mass. 2003). According to Defendants' attorney declaration and exhibits, Defendants disclosed the GTE Plan for Group Insurance, the GTE Plan for Employees' Pensions, and the Long-Term Disability Income Protection Plan in addition to the GTE Savings Plan.

[3]Plaintiffs do not appeal the district court's dismissal of their state common-law claim.

defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998).

## A.        Entitlement to Benefits Under the Plans

Plaintiffs argue that the district court improperly dismissed their claim of entitlement to plan benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), for lack of standing. See, e.g., Abraham v. Exxon Corp., 85 F.3d 1126, 1129 (5th Cir. 1996) ("Whether an employee has standing as a 'participant' depends, not on whether he is actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits."). The district court made no reference in its decision to standing. Rather, based on the plan documents submitted by Defendants, the court concluded that "by the terms of the plans, [P]laintiffs are not entitled to benefits because they [were] not paid directly by GTE, but instead [were] paid by temporary payroll agencies." Edes, 288 F. Supp. 2d at 58 (footnote omitted).[4]

Plaintiffs also insist that they may proceed with their claim because they were common-law employees of GTE by virtue of

---

[4]"Where, as here, 'a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" Perry v. New Eng. Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (1st Cir. 2003) (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

their full "integrat[ion] in GTE's workforce." Whether or not this is so, the district court correctly concluded that "[t]he fact that [P]laintiffs may be common law employees is not by itself enough to state a valid claim for benefits under ERISA." Edes, 288 F. Supp. 2d at 58-59. In an opinion published several months after the district court rendered its decision, a panel of this circuit reached the same conclusion, stating that a plaintiff "may have a plausible argument that he was a common law employee . . . , but it is the language of the Plan, not common law status, that controls." Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 14 (1st Cir. 2003).

Plaintiffs' own complaint alleges, and the plan documents submitted by Defendants confirm, that GTE's ERISA plans explicitly exclude from participation employees who were not "paid directly" by GTE, without regard for their common-law employment status.[5] Plaintiffs further allege that they were in fact not "paid directly" by GTE, but by third-party payroll agencies. Because they "can prove no set of facts to support [their] claim" for benefits under the ERISA plans, Rockwell, 26 F.3d at 260, the district court properly dismissed Plaintiffs' claim under ERISA § 502(a)(1)(B).

---

[5]Similarly, in their opening brief on appeal, Plaintiffs "assum[e] that GTE's welfare plans all have similar criteria for participation. Plan benefits are available to all active GTE employees who are paid directly by GTE."

**B.        Interference with Attainment of Plan Participation Rights**

Plaintiffs allege that Defendants misclassified them as off-payroll employees for the purpose of interfering with their attainment of plan participation rights in violation of ERISA § 510, 29 U.S.C. § 1140.  That statute provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled [under ERISA or an ERISA plan], or for the purpose of interfering with the attainment of any right to which such participant may become entitled.

29 U.S.C. § 1140.

The district court held that Plaintiffs could not state a claim for relief under this provision for two independent reasons.  "First, an employer may hire employees under terms that render them ineligible to receive benefits given to other employees without violating [ERISA] § 510."  Edes, 288 F. Supp. 2d at 59.  Plaintiffs argue that the district court's analysis ignored the language in ERISA § 510 prohibiting employers from discriminating against a participant or beneficiary "for the purpose of interfering with the attainment of any right to which such participant may become entitled" under an ERISA plan.  29 U.S.C. § 1140 (emphasis added).  Plaintiffs argue that whether or not Defendants permissibly excluded them from plan eligibility at the time they were hired as off-payroll employees, Defendants failed to move them to the GTE payroll after they were hired, "for the

-8-

purpose of interfering with the attainment" of participation rights to which they should have become entitled.[6]

We need not decide the circumstances, if any, under which employees who are ineligible for ERISA benefits at the time of hiring may state a claim under ERISA § 510, based on a defendant's failure to reclassify them, because the district court properly dismissed the claim on the alternate ground that it was time-barred. See Edes, 288 F. Supp. 2d at 59. The district court determined the applicable statute of limitations by reference to state law. See Muldoon v. C.J. Muldoon & Sons, 278 F.3d 31, 32 (1st Cir. 2002) (per curiam) ("Because Congress did not provide a statute of limitations in the ERISA statute for section 510 claims, federal courts must apply the limitations period of the state-law cause of action most analogous to the federal claim."). The claimed wrong here is the misclassification of Plaintiffs in April 1994 when they went on the payroll of the agency rather than the company. Consequently, the district court properly applied Massachusetts' three-year statute of limitations for torts, Mass. Gen. Laws ch. 260, § 2A, to Plaintiffs' claim under ERISA § 510.

---

[6]More accurately, Plaintiffs allege that GTE designated them as "temporary" employees at the time they were hired and failed to reclassify them as "regular" employees at some point during their employment. Because the dispositive issue determining eligibility for participation in GTE's ERISA plans is not whether Plaintiffs were "temporary" or "regular" employees but simply whether they were "paid directly" by their employing business unit, we have construed Plaintiffs' claim accordingly.

The district court next applied federal law to determine the date on which Plaintiffs' claim accrued and started the clock on the three-year statute of limitations. Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1138 (7th Cir. 1992) (federal common law determines date of accrual of cause of action under ERISA § 510); N. Cal. Retail Clerks Unions v. Jumbo Markets, Inc., 906 F.2d 1371, 1372 (9th Cir. 1990) (federal common law determines when cause of action by trust funds to recover employer's contribution accrues under ERISA). For a claim under ERISA § 510, "it is the [challenged employment] decision and the participant's discovery of this decision that dictates accrual" of Plaintiffs' cause of action. Tolle, 977 F.2d at 1140-41. Applying this rule in light of Plaintiffs' allegation that they were directed to sign on with third-party payroll agencies at their time of hire, the district court concluded that "[t]he statute of limitations clock began on [P]laintiffs' claim when [P]laintiffs were hired in April 1994 and classified as employees of a temporary payroll agency instead of as regular employees of GTE." Edes, 288 F. Supp. 2d at 59.

Plaintiffs argue that even if they discovered the factual basis for their claim as early as April 1994, their complaint alleges a continuing tort that tolled the statute of limitations until they received their last paychecks.[7] Under this theory, in

[7]We grant Plaintiffs the inference that Parsons, whom the complaint alleges was terminated in August 1998, continued to receive paychecks through October 1998, within the three years

-10-

Plaintiffs' words, "[e]very time [Plaintiffs] received a paycheck from [a] third-party payroll company while still being denied benefits under any of the GTE ERISA plans they were incurring new injury, as a result of [Defendants'] continuing wrongful behavior." As authority for this argument, Plaintiffs cite Doe v. Town of Blandford, 525 N.E.2d 403 (Mass. 1988), a case in which a claimant under the Massachusetts Tort Claims Act alleged the continuing torts of negligent supervision and failure to fire, which tolled the time period for presentment of her claim to an executive officer of a public employer as required by statute.

Even assuming for the sake of argument that Massachusetts' continuing tort doctrine is applicable to a federal claim under ERISA § 510 (an issue we do not decide),[8] Plaintiffs have not alleged a continuing tort. While Plaintiffs may have felt the ongoing effects of their ineligibility for ERISA benefits every time they received a paycheck from a third-party payroll agency,

---

prior to the filing of the complaint on October 10, 2001. See Clorox Co. P.R., 228 F.3d at 30 (court reviewing motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must grant all reasonable inferences in the plaintiff's favor).

[8]Cf. Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1332 (9th Cir. 1996) (rejecting continuing violation theory for claim subject to state statute of limitations under ERISA § 510 by analogy to ERISA § 413); see generally Rodriquez Narvaez v. Nazario, 895 F.2d 38, 42 (1st Cir. 1990) (discussing, in context of federal civil rights actions subject to state statutes of limitations, considerations involved in determining whether to apply state law exceptions to application of state statutes of limitations).

-11-

Plaintiffs' own allegations make clear that Defendants' wrongful conduct, if any, involved the misclassification of Plaintiffs as off-payroll employees at their time of hire in April 1994.  See Berry v. Allstate Ins. Co., 252 F. Supp. 2d 336, 346 (E.D. Tex. 2003) ("Allstate's refusal to allow Plaintiffs to participate in its benefit plans was the single act that served as the basis for the alleged wrongful discrimination."), aff'd, 84 Fed. Appx. 442 (5th Cir. 2004).  The district court properly dismissed Plaintiffs' ERISA § 510 claim as time-barred.[9]

## C.        Breaches of Fiduciary Duty

Plaintiffs allege that the defendant plan fiduciaries breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104, by: (1) misclassifying Plaintiffs as off-payroll employees ineligible to participate in GTE's ERISA plans and (2) creating a structural defect in the design of the plans through the use of arbitrary eligibility criteria to exclude a disproportionate number of employees from plan participation in violation of ERISA's

---

[9]Plaintiffs do not renew their argument, made before the district court, that the statute of limitations was tolled while they exhausted administrative remedies.  See Edes, 288 F. Supp. 2d at 60-61.  Instead, Plaintiffs argue that under Massachusetts law the statute of limitations should be equitably tolled because they reasonably relied on GTE's representations that it would eventually place them on GTE's direct payroll.  Not only does the complaint fail to allege any facts supporting this argument, but Plaintiffs have forfeited the argument through their failure to raise it below.  United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, [he] may not unveil it in the court of appeals.").

minimum participation standards.[10]  The district court held that

Plaintiffs' claims were barred by the ERISA statute of limitations

applicable to breaches of fiduciary duty.  ERISA § 413, 29 U.S.C.

§ 1113, prohibits commencement of such claims "after the earlier

of":

> (1) six years after (A) the date of the last
> action which constituted a part of the breach
> or violation, or (B) in the case of an
> omission, the latest date on which the
> fiduciary could have cured the breach or
> violation, or
>
> (2) three years after the earliest date on
> which the plaintiff had <u>actual knowledge</u> of
> the breach or violation . . . .

(emphasis added).[11]  Pursuant to § 413, "ERISA provides that claims

based on a breach of fiduciary duty must be brought within six

---

[10]The Ninth Circuit has permitted enforcement of ERISA § 404
under a "structural defect" theory, which posits that "rules that
exclude employees from receiving benefits for reasons that are
arbitrary and capricious are structurally defective and violate
section 1104." Siles v. ILGWU Nat'l Retirement Fund, 783 F.2d 923,
929 (9th Cir. 1986); see also Abraham, 85 F.3d at 1129-30
(discussing "structural defect" theory).  Defendants argued in
their memorandum in further support of their motion to dismiss that
Plaintiffs' structural defect claim arising out of an alleged
structural defect in plan design (as distinct from a structural
defect in plan administration) is not cognizable under ERISA § 404.
The district court did not address this argument, and neither do
we.  We discuss the merits of Plaintiffs' independent claim that
the plans' use of arbitrary eligibility criteria violates ERISA's
minimum participation standards, ERISA § 202, 29 U.S.C. § 1052, in
Part II.D.

[11]ERISA § 413 also contains an exception for "fraud or
concealment," neither of which Plaintiffs allege, permitting an
action to "be commenced not later than six years after the date of
discovery of such breach or violation." 29 U.S.C. § 1113.

years of the breach or 'the latest date on which the fiduciary could have cured the breach or violation,' and within three years of the date on which the plaintiff had actual knowledge of the breach." Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 118 (1st Cir. 2002). The district court found Plaintiffs' claim barred by the three-year statute of limitations because "[P]laintiffs did have actual knowledge of their status in 1994, yet failed to commence their case until 2001." Edes, 288 F. Supp. 2d 55, 61.[12]

Plaintiffs argue on appeal that "actual knowledge of a breach or violation" within the meaning of ERISA § 413 "requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Murata Erie N. Am., Inc., 980 F.2d 889, 900 (3d Cir. 1992); see also Maher v. Strachan Shipping Co., 68 F.3d 951, 954 (5th Cir. 1995) (applying Third Circuit test). The issue of defining "actual knowledge" has vexed the circuits. The briefing purports to divine a clear circuit split. On that view, as noted, the Third and Fifth Circuits follow a rule that for an ERISA § 404 claim to accrue, a plaintiff must know of not only

_____

[12]Defendants did not argue below, nor do they argue on appeal, that Plaintiffs' claim of breach of fiduciary duty is independently barred by the alternate six-year statute of limitations in ERISA § 413(1).

-14-

all the facts and events constituting the fiduciary breach, but also "that those events supported a claim of breach of fiduciary duty or violation under ERISA." Murata, 980 F.2d at 900; see also Maher, 68 F.3d at 954 (quoting Murata). By contrast, the Sixth, Seventh, Ninth, and Eleventh Circuits are said to have a hard and fast rule that a plaintiff need only have had "knowledge of the facts or transaction that constituted the alleged violation" -- and not knowledge that those facts support a legal claim -- to start the limitation period running. Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992); see also Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003); Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985). Accord Brock v. Nellis, 809 F.2d 753, 755 (11th Cir. 1987). The Second and D.C. Circuits, on this scale, have hybrid analyses. See Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001) (plaintiff need have "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty," but "need not have knowledge of the relevant law") (citing Maher, 68 F.3d at 954; Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992); and Blanton, 760 F.2d at 992); Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 957 (D.C. Cir. 1985) ("The disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach.").

We think the differences are exaggerated, and the positions of the circuits, as evidenced by how they apply the "rules" to the facts, are much more nuanced. Further, even if the language set forth above were an accurate depiction, we would find ourselves in the middle.

Settling on a description of the appropriate standard to apply is a complex venture. Prior to 1987, ERISA § 413 also "contained a constructive knowledge provision, stating that the three-year limitations period began when a plaintiff 'could reasonably be expected to have obtained knowledge' from certain reports filed with the Secretary of Labor." Martin, 966 F.2d at 1085 n.6 (citing earlier version and legislative history). Given this explicit statutory alteration, as the Seventh Circuit has recognized, "actual knowledge must be distinguished from constructive knowledge" in applying ERISA § 413. Id. at 1086. Yet "[i]t is difficult to say in the abstract precisely what constitutes 'actual knowledge' of a 'breach or violation.'" Id. Where the alleged breach arises out of a financial transaction involving ERISA plan funds, determining where the distinction between actual and constructive knowledge lies in a particular case may depend "on the level of generality employed in characterizing the transaction at issue," which may depend, in turn, on an examination of "the complexity of the underlying factual

transaction, the complexity of the legal claim and the egregiousness of the alleged violation." Id.

We agree with the observation that the primary purpose of a statute of limitations is to "prevent[] plaintiffs from sleeping on their rights and [to] prohibit[] the prosecution of stale claims." Wright, 349 F.3d at 330. The amendment to ERISA § 413 means that knowledge of facts cannot be attributed to plaintiffs who have no actual knowledge of them. We also agree that there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows "the essential facts of the transaction or conduct constituting the violation." Martin, 966 F.2d at 1086. And, like the Martin court, we recognize that determining the meaning of complex transactions may take some time; mere knowledge of facts indicating that "'something was awry'" does not always mean there is actual knowledge of a violation. Id. (quoting Radiology Ctr., S.C. v. Stifel, Nicolaus & Co., 919 F.2d 1216, 1221 (7th Cir. 1990)). On the other hand, we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff. See id. at 1086 n.7.

The question of when there is "actual knowledge of a violation," as Martin notes, is one which may change with different facts. Here we need not go into the permutations of that question, because it is clear that Plaintiffs had the requisite "actual knowledge" in April 1994. Plaintiffs' claim of breach of fiduciary

-17-

duty arises not from an intricate financial transaction, cf., e.g., id. at 1087-88 (analyzing claim against fund trustees for use of improper contract bidding process as violation of duty to eliminate imprudent investments), but from GTE's decision to hire Plaintiffs without rendering them eligible to participate in its ERISA plans. In essence, Plaintiffs allege that Defendants had a fiduciary duty to classify them as eligible for plan participation, and to design their plans accordingly, based on their status as common-law employees, regardless of the plans' actual eligibility criteria.

As the facts alleged in their complaint establish, Plaintiffs knew in April 1994 that they were not classified as employees on GTE's direct payroll. At the same time, Plaintiffs received no ERISA benefits from GTE. These facts establish that Plaintiffs had actual knowledge that if Defendants had a fiduciary duty to classify them as eligible for ERISA plan participation and/or to design their plans accordingly, they had breached that duty. Accordingly, Plaintiffs need not have had actual knowledge of the plans' eligibility criteria to start the statute of limitations running, and their claim of breach of fiduciary duty in violation of ERISA § 404, filed more than three years later, is time-barred under ERISA § 413.

D. **Violation of ERISA's Minimum Participation Standards**

ERISA sets minimum participation standards in the form of limits on a plan's imposition of age- or length-of-service-related

conditions of participation, see ERISA § 202(a)(1), 29 U.S.C. § 1052(a)(1), on any employee who is "otherwise entitled to participate in the plan," 29 U.S.C. § 1052(a)(4). A provision of the Code of Federal Regulations, 26 C.F.R. § 1.410(a)-3(e)(1), which is made applicable to ERISA's statutory minimum participation standards under ERISA § 3002(c), 29 U.S.C. § 1202(c), clarifies that "[p]lan provisions which have the effect of requiring an age or service requirement . . . will be treated as if they imposed an age or service requirement," thereby preventing a plan from evading ERISA's minimum participation standards through creative plan design. Apart from these limitations, "[s]o long as a plan does not discriminate based on age or length of service, nothing in ERISA requires a plan to extend benefits to every common law employee." Kolling, 347 F.3d at 14.

Plaintiffs make a cursory attempt to argue that the GTE ERISA plans' eligibility criterion -- whether an employee is "paid directly" or by a third-party payroll agency -- is a condition of participation imposed on employees who are "otherwise entitled to participate" that "ha[s] the effect" of a minimum-service requirement exceeding the permissible limits of ERISA's minimum participation standards. Under Plaintiffs' theory, "[s]ince GTE could choose at any time (or never)" to place Plaintiffs on GTE's own payroll, "what GTE has created are exclusions of uncertain and arbitrary duration." Even if this is so, Plaintiffs' indefinite

-19-

exclusion from plan eligibility simply renders them employees who are not (and may never be) "entitled to participate in the plan[s]," 29 U.S.C. § 1052(a)(4) -- not employees who are otherwise eligible but who are nevertheless excluded pending completion of a specific period of service exceeding the minimum permitted under ERISA.

Despite Plaintiffs' attempt to hitch their claim to ERISA's minimum participation standards limiting the use of age- or length-of-service-related conditions of participation, their true complaint remains that the GTE ERISA plans use arbitrary criteria to establish an employee's threshold eligibility for plan participation -- a complaint that has nothing to do with ERISA's minimum participation standards. Indeed, Plaintiffs identify no statutory provision that prohibits the use of such arbitrary eligibility criteria. Rather, Plaintiffs rely on a Treasury regulation, 26 C.F.R. § 1.410(b)-4(b), which sets forth one method by which an ERISA plan may voluntarily satisfy certain requirements in order to qualify for preferential tax treatment. See 26 U.S.C. § 410(b); 26 C.F.R. § 1.410(b)-2(b).

Under § 1.410(b)-4(b),

> [a plan] classification is established by the employer in accordance with this paragraph (b) if and only if, based on all the facts and circumstances, the classification is reasonable and is established under objective business criteria that identify the category of employees who benefit under the plan. Reasonable classifications generally include

-20-

> specified job categories, nature of compensation (i.e., salaried or hourly), geographic location, and similar bona fide business criteria. <u>An enumeration of employees by name or other specific criteria having substantially the same effect as an enumeration by name is not considered a reasonable classification.</u>

(emphases added.) According to Plaintiffs, the GTE ERISA plans' use of arbitrary distinctions between employees who are "paid directly" and those who are paid by third-party payroll agencies has "substantially the same effect as an enumeration by name" and "is not considered a reasonable classification . . . established under objective business criteria" within the meaning of the regulation. On this basis, Plaintiffs argue that Defendants impermissibly excluded them from plan eligibility.

There are two problems with this argument. Even if Plaintiffs are right that the GTE ERISA plans violate this regulation (a judgment we do not make), Plaintiffs themselves recognize that § 1.410(b)-4(b) is not incorporated into ERISA. Hence a violation of this regulation cannot be a violation of ERISA through incorporation. Nor does § 1.410(b)-4(b) confer substantive rights on ERISA plan participants or would-be participants independent of ERISA's statutory provisions. The district court concluded that, "[w]hile GTE's classification may well be unreasonable and arbitrary under the Treasury regulations, . . . this failure to comply with the tax regulations does not permit the

Court to rewrite the plan."  Edes, 288 F. Supp. 2d at 64.  As the

Fifth Circuit reasoned in Abraham, 85 F.3d at 1131:

> [t]he [Treasury] regulations purport to do no
> more than determine whether a plan is a
> qualified tax plan.  Failure to meet the
> requirements of those regulations results in
> the loss of a beneficial tax status; it does
> not permit a court to rewrite the plan to
> include additional employees.  The Treasury
> regulations do not create substantive rights
> under ERISA that would permit the relief
> [plaintiff] requests.

Accord Bronk v. Mountain States Tel. & Tel., Inc., 140 F.3d 1335,

1338 (10th Cir. 1998); Montesano v. Xerox Corp., 117 F. Supp. 2d

147, 162 (D. Conn. 2000), aff'd in part and rev'd on an unrelated

ground, 256 F.3d 86, 89 (2d Cir. 2001).  Plaintiffs therefore fail

to state a claim under ERISA based on Defendants' alleged violation

of 26 C.F.R. § 1.410(b)-4(b) or, in the alternative, under that

regulation standing alone.[13]

---

[13]Plaintiffs belatedly argue that an ERISA plan may, by its own
terms, provide that the plan must comply with Treasury regulations
governing qualification for preferred tax status.  See Bronk, 140
F.3d at 1338 (distinguishing plans containing explicit provisions
"that they must comply with ERISA, the Internal Revenue Code and
Treasury Department regulations governing tax-qualification").  In
a footnote in their opening brief on appeal, Plaintiffs assert that
GTE's ERISA plans "state an intent to comply with the tax law.
Thus, they would be constructed to comply with the tax law"
(referring, presumably, to those tax laws that govern qualification
for preferred tax status).  In their complaint, however, Plaintiffs
alleged only that one set of GTE plans, the GTE Retirement Income
Plans, are "intended to comply with the Tax Reform Act of 1986,
subsequent legislation, and relevant rulings and regulations."  At
oral argument, Plaintiffs asserted that Defendants' failure to
disclose the complete language of each GTE ERISA plan prevented
them from determining whether any of the plans contain such a
requirement.  As we have noted, Plaintiffs did not seek to compel

-22-

**E.      Lack of Written Plan Eligibility Criteria**

Plaintiffs argue that Defendants are in violation of ERISA § 402, 29 U.S.C. § 1102(a)(1), which requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," because eligibility for participation in GTE ERISA plans cannot be determined without recourse to payroll lists that are not part of the plan documents themselves.  The statutory requirement that plan terms be set forth in writing serves the purpose of "ensur[ing] that participants know their rights and obligations under the plan, and to provide some degree of certainty in the administration of benefits."  Fenton v. John Hancock Mut. Life. Ins. Co., 400 F.3d 83, 88-89 (1st Cir. 2005) (citations omitted), petition for cert. filed, 2005 WL 1656497 (U.S. July 13, 2005) (No. 05-80) (presenting question whether district court properly considered summary plan descriptions in review of administrator's denial of benefits).  Plaintiffs argue that the plans' arbitrary distinction between employees who are "paid directly" and those who are paid by third-party payroll agencies evades this requirement because it fails to establish objective criteria for determining plan eligibility.  To the contrary, as the district court stated, the "plan documents specify

disclosure of additional plan documents.  See supra, note 2.  More importantly, Plaintiffs have forfeited the argument that GTE's ERISA plans are, by their own terms, subject to rules governing qualification for favorable tax treatment by failing to raise it before the district court.  See Slade, 980 F.2d at 30.

'objective criteria' for eligibility: whether or not employees are paid directly by GTE." Edes, 288 F. Supp. 2d at 64. The plan documents thus provide adequate notice of participation rights based on an employee's readily discernable payroll status, and the district court properly held that Plaintiffs failed to state a claim for a violation of ERISA § 402.

## III.

Because Plaintiffs' claims of interference with their attainment of plan participation rights and breach of fiduciary duty under ERISA §§ 510 and 404 are time-barred, and because Plaintiffs have otherwise failed to state claims for which relief may be granted, the decision of the district court dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **affirmed**.

**So ordered**.