Ronald SLUSARSKI, Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Cigna Group Insurance, and Assa Abloy, Inc. Long–Term Disability Plan, Defendants.

No. CA 08–292 S.

United States District Court, D. Rhode Island.

July 9, 2009.

J. Scott Kilpatrick, Chisholm Chisholm & Kilpatrick LLP, Providence, RI, for Plaintiff.

Brooks R. Magratten, Pierce Atwood LLP, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR PROTECTIVE ORDER

DAVID L. MARTIN, United States Magistrate Judge.

Before the Court are two motions for protective orders filed by Defendants Life Insurance Company of North America ("LINA"), Cigna Group Insurance,[1] and Assa Abloy, Inc. Long–Term Disability Plan (the "Plan") (collectively "Defendants"). *See* Defendants' Motion for Protective Order (Doc. # 12) ("First Motion"); Defendants' Motion for Protective Order (Doc. # 15) ("Second Motion") (collectively, the "Motions"). By the First Motion, Defendants seek to block the Rule 30(b)(6) deposition of LINA noticed by Plaintiff Ronald Slusarski ("Plaintiff" or "Mr. Slusarski"). *See* Memorandum in Support of Defendants' Motion for Protective Order ("Defendants' Mem. First Motion") at 1. By the Second Motion, Defendants seek to block discovery sought by Plaintiff via two sets of interrogatories, two sets of requests for production, and one request for admissions. *See* Second Motion at 1. The Court conducted hearings on the Motions on May 29 and June 18, 2009. Thereafter, it took the matters under advisement.

### Facts

The Amended Complaint alleges that Plaintiff was an employee of Assa Abloy, Inc. ("Assa Abloy"), and also an employee of a subsidiary corporation, Assa Abloy Architectural Hardware, Inc. ("AAAH").[2] Amended Complaint (Doc. # 26) ¶¶ 9, 14. As a result of his employment, Plaintiff was a participant in the Plan, an employee

---

1. On June 10, 2009, Plaintiff filed an Amended Complaint (Doc. # 26) which did not include Cigna Group Insurance as a named defendant. The parties have stipulated that "Cigna Group Insurance is not a legal entity and is merely a trade name used by various insurance companies affiliated with Cigna Corp." Stipulation (Doc. # 25).

2. Defendants deny that Plaintiff was an employee of Assa Abloy Architectural Hardware, Inc. ("AAAH"). *See* Answer to the Amended Complaint (Doc. # 27) ¶ 7. Defendants appear to contend that Plaintiff was employed by another entity, Sargent Manufacturing Company:

> Mr. Slusarski reported to LINA that he had been employed by "Sargent Manufacturing Co./ ASSA ABLOY, Inc." and that he had been dealing with the Sargent Manufactur-

ing Co./ ASSA Abloy, Inc. Personnel Department regarding his employee benefits. LINA communicated with the Sargent Manufacturing Company to verify Mr. Slusarski's salary. Employer information in the claim file identifies Mr. Slusarski as having worked at the Sargent Manufacturing Company location of Assa Abloy, Inc. LINA received a short term disability claim form for Mr. Slusarski from Sargent Manufacturing Co. LINA received a job description and insurance record card from Sargent Manufacturing Company. Finally, LINA was informed that Mr. Slusarski's short-term disability benefits were administered by "Sargent."

Memorandum in Support of Defendants' Motion for Protective Order ("Defendants' Mem. First Motion") at 4–5.

welfare benefit plan regulated by ERISA.[3] *See id.* ¶¶ 11, 13, 14–15. The Plan was established by Assa Abloy and maintained for the benefit of its employees and those of its numerous subsidiary and affiliated companies.[4] *See id.* ¶¶ 11, 13, 15. Among other features, the Plan, which was insured and administered by LINA, provided long term disability ("LTD") benefits to participants. *See id.* ¶ 11, 16. The Plan listed approximately twenty-two classifications under which Plan participants would fall depending on which subsidiary or affiliation of Assa Abloy was their employer. *See id.* ¶¶ 17, 70, 86, 87.

According to Plaintiff, he was employed as a Director of Product Development Engineering for AAAH until he became fully disabled in September, 2005, due to degenerative and progressive spinal stenosis and related symptoms. *See id.* ¶ 20. In August 2005, he applied for and subsequently received short term disability benefits under the Plan. *See id.* ¶ 21. Thereafter, Plaintiff filed for LTD benefits under the Plan and for a waiver of premium benefits on his life insurance policy. *See id.* ¶ 23. In April of 2006, LINA denied Plaintiff's claim for benefits. *See id.* ¶ 24. Plaintiff appealed LINA's denial of benefits in October of 2006. *See id.* ¶ 26. After several extension requests by both LINA and Plaintiff, on February 2, 2007, LINA forwarded a letter to Plaintiff, affirming the

previous denials of waiver of premium benefits and LTD benefits. *See id.* ¶ 27.

In August 2007, Plaintiff requested a review of the denial of benefits. *See id.* ¶ 28. Over the next several months, Plaintiff, through his attorney, requested documents pertaining to the Plan and forwarded further medical documentation to LINA. *See id.* ¶¶ 31–32. Plaintiff's second appeal was completed on June 9, 2008. *See id.* ¶ 32. When he did not receive a determination or notice of an extension with respect to this appeal within forty-five days, Plaintiff filed this action on August 1, 2008. *See id.* ¶¶ 34–35.

In his Complaint (Doc. # 1), Plaintiff requested payment of LTD benefits due under the policy, waiver of premium payments from the date of disability with reimbursement for premiums paid plus interest, prejudgment interest on all benefits that accrued prior to judgment, attorney's fees, and costs of suit. *See* Amended Complaint ¶ 36. Within days of filing suit, Defendants reversed the previous denial and awarded benefits.[5] *See id.* ¶ 37. However, Plaintiff alleges that the benefits awarded "are disproportionately lower than the benefits he should receive relative to his predisability income level, and to the benefits enjoyed by other Plan participants." *Id.* ¶ 88.

In his Amended Complaint, Plaintiff alleges that LINA improperly classified him

---

**3.** ERISA is the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

**4.** At the May 29, 2009, hearing, the Court requested that Plaintiff's counsel provide a copy of the Assa Abloy, Inc. Long–Term Disability Plan. He subsequently did so. The Court has designated this document as a hearing exhibit, and it is cited herein as "Plan Doc."

**5.** Plaintiff indicates that the benefits were awarded retroactively for the period of April

1, 2006, through July 31, 2008. *See* Memorandum in Support of Defendants' Motion for Protective Order ("Defendants' Mem. Second Motion"), Attachment ("Att.") A (Plaintiff Ronald Slusarski's Request for Admissions Directed to Defendant Life Insurance Company of North America A/K/A Cigna Group Insurance), Request No. 23. Short Term Disability benefits appeared to have been paid from October of 2005 though March of 2006. *See id.,* Request No. 24.

as a Class 1 Plan participant,[6] *see id.* ¶ 77, that this classification resulted in the lowest possible level of benefits under the Plan, *see id.* ¶¶ 40, 73, and that the decision to so classify him was wrongful and contrary to Defendants' fiduciary duty to Plaintiff, *see id.* ¶ 79. In particular, Plaintiff complains that as a result of being placed in Class 1 his benefits are limited to $5,000.00 per month (about 43% of his predisability earnings), *see id.* ¶¶ 42, 75, that other classes under the Plan have substantially higher caps, such as $10,000.00 and $12,000.00, *see id.* ¶ 76, and that if the "Maximum Monthly Benefit" limitation contained in Class 1 had not limited his benefits, he would have been entitled to receive approximately $7,000.00 per month,[7] *see id.* ¶ 42. Plaintiff further complains that he has continuously met the Plan's definition of "disabled," *id.* ¶ 38, since the onset of his disability and that, despite this, LINA has refused to pay interest on back benefits, as well as attorney's fees and costs of suit, *see id.* ¶ 44.

In Count I, Plaintiff seeks interest on the disability payments which were paid retroactively. *See id.* ¶¶ 54–56. As support for this claim, Plaintiff states that LINA had the use of this money during the period benefits were not paid and that the payment of interest on this money would serve to make him whole. *See id.* ¶¶ 55–56. In Count II, Plaintiff seeks attorney's fees and costs of suit. *See id.* ¶ 59, 62. As support for this claim, Plaintiff states that Defendants' refusal to pay benefits until litigation commenced was wrongful and contrary to Defendants' fiduciary duty to Plaintiff. *See id.* ¶ 60. In Counts III and IV, Plaintiff challenges Defendants' decision to classify him as a Class 1 participant, *see id.* ¶¶ 77, 79, and he indicates that he seeks "Recovery of Benefits Due," *id.* (parenthetical subtitles appearing beneath Counts III and IV).

## The Discovery Sought

Plaintiff seeks to conduct discovery regarding the following general topics: 1) why AAAH was not listed among the classes designated in the Plan, *see, e.g.,* Defendants' Mem. First Motion, Attachment ("Att.") A (Notice to Take Deposition[8]) ¶ 4; Memorandum in Support of

---

**6.** Class 1 is defined in the Plan Doc. as "All active, Full-time salaried Employees of ASSA ABLOY, Inc. (Corporate), Sargent Manufacturing Company, Assa, Inc., Essex Industries and ASSA ABLOY Sales & Marketing." Plan Doc. at 000006.

**7.** According to Plaintiff:

Generally, each class was entitled to a percentage (60% or 66.7%) of earnings *or* the "maximum monthly benefit," whichever was less. The "maximum monthly benefit" for each class varied substantially (e.g., Class # 1 = $5,000; Class # 10 = $6,000; Class # 16 = $8,000; Class # 7 = $10,000; and Class # 17 = $12,000). Mr. Slusarski was a highly compensated employee (Director of Product Development Engineering). He was earning $140,000.00 per year. At 66.7% his benefits would be $7,781.00 per month. At 60% his benefits would be $7,000.00 per month.

Plaintiff's Memorandum in Support of His Opposition to Defendants' Motions for Protective Order (Doc. # 18) ("Plaintiff's Mem.") at 4 n. 2.

**8.** Plaintiff has noticed six topics for the Rule 30(b)(6) deposition of LINA: 1) LINA's policy, practice, or procedure with respect to the payment of interest on retroactive benefits paid as a result of a claimant's successful appeal of a Long Term Disability ("LTD") denial/ termination; 2) LINA's policy, practice, or procedure where an insured does not clearly fall under a designated employee class in a LTD plan; 3) LINA's policy, practice, or procedure where an insured plan participant's salary is disproportionate to the "maximum monthly benefit" designated under the plan; 4) the reason that AAAH was not listed among the classes designated in the LTD plan at issue in this case; 5) the identities of all other Assa Abloy Architectural Hardware, Inc., employees for the past five years and the

Defendants' Motion for Protective Order ("Defendants' Mem. Second Motion"), Att. C (Plaintiff Ronald Slusarki's Interrogatories Directed to Defendant Life Insurance Company of North America a/k/a Cigna Group Insurance ("Interrogatories to LINA")), Interrogatory Number ("Interrog. No.") 9; 2) the identities of other AAAH employees and the classes under which they would be placed under the Plan, *see, e.g.*, Defendants' Mem. First Motion, Att. A ¶ 5; Defendants' Mem. Second Motion, Att. E (Plaintiff Ronald Slusarski's Interrogatories Directed to Defendant Assa Abloy, Inc. Long–Term Disability Plan ("Interrogatories to Plan")), Interrog. Nos. 1, 2; 3) why Plaintiff was classified under the Plan as being in Class 1, *see id.*, Interrog. No. 4; 4) whether Defendants have paid interest and/or attorneys' fees on an award of retroactive benefits, *see* Defendants' Mem. First Motion, Att. C, Interrog. Nos. 1–4; Defendants' Mem. Second Motion, Att. E, Interrog. Nos. 5–8; and 5) the existence of income and other incentives and disincentives at LINA with respect to encouraging the denial of claims and appeals, *see* Defendants' Mem. Second Motion, Att. B (Plaintiff Ronald Slusarski's Requests for Production Directed to Defendant Life Insurance Company of North America a/k/a Cigna Group Insurance ("Requests for Production to LINA")), Request No. 4.

### Law

■ "ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator. Because full-blown discovery would reconfigure that record and distort judicial review, courts have permitted only modest, specifically targeted discovery in such cases." *Denmark v. Liberty Life Assurance Co. of Boston,* 566 F.3d 1, 10 (1st Cir.2009). Thus, "some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Id.* (quoting *Liston v. Unum Corp. Officer Sev. Plan,* 330 F.3d 19, 23 (1st Cir.2003)).

■ Where the entity that administers an employee benefit plan both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, this dual role creates a structural conflict of interest. *Metropolitan Life Ins. Co. v. Glenn,* —— U.S. ——, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008); *see also Denmark v. Liberty Life Assurance Co. of Boston,* 566 F.3d at 5 n. 2 (calling "such instances structural conflicts, in contradistinction to actual conflicts (i.e., instances in which the fiduciary's decision was in fact motivated by a conflicting interest)"). "[C]ourts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." *Denmark v. Liberty Life Assurance Co. of Boston,* 566 F.3d at 9.

■ Where the administrative record does not contain the procedures which the plan administrator has used to prevent or mitigate the effect of structural conflict, conflict-oriented discovery may be permitted to reveal those procedures. *Id.* at 10. However, "such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." *Id.* *But see id.* at 12 (Lipez, J., concurring)("Decreeing in this case that such

---

classes under which they would be placed under the LTD plan; and 6) the income and other incentives and disincentives in place at LINA with respect to encouraging the denial of claims and appeals or, on the other hand, to encourage claims and appeals determinations. *See* Defendants' Mem. First Motion, Att. A (Notice to Take Deposition).

discovery must be allowed sparingly, or confined to certain categories, is an unwarranted signal that discovery into the existence of an actual conflict is disfavored.").

## Standard of Review

■ In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that when an ERISA-regulated plan vests discretion in the plan administrator, the latter's resolution of claims must be reviewed deferentially. *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d at 5. Absent such a delegation of discretionary authority, a plan administrator's decisions are to be reviewed de novo.[9] *Id.* at 6. Where plan documents delegate discretionary authority to the plan administrator (whether or not structurally conflicted), courts should review benefit-denial decisions for abuse of discretion, considering any conflict as one of a myriad of relevant factors. *Id.* at 7.

## Discussion

Plaintiff notes that before this action was filed, the only dispute was whether he was disabled. *See* Plaintiff's Memorandum in Support of His Opposition to Defendants' Motions for Protective Order (Doc. # 18) ("Plaintiff's Mem.") at 3. As a result,

Plaintiff contends that the administrative record is incomplete "as to the three (3) principal topics on which discovery is sought: (a) proper classification; (b) payment of interest on back benefits; and (c) payment of attorney fees on claim reversals and claim reversals after litigation commenced." *Id.* at 4. Plaintiff maintains that his "discovery is tailored to fill these gaps in the evidentiary record."[10] *Id.*

### Proper Classification

■ Plaintiff claims to have been an employee of AAAH, a subsidiary which is not included in the list of affiliates which are covered under the Plan. *See* Plan Doc. at 000087 (listing affiliates); *see also id.* at 000006–000007 (listing Classes of Eligible Employees). Defendants, on the other hand, contend that Plaintiff was an employee of Sargent Manufacturing Co., whose employees are specifically identified as Class 1 employees under the Plan. *See* Plan Doc. at 000006. Plaintiff argues that:

> The lack of Mr. Slusarski's class designation in the policy may be an ambiguity in the policy because he could have fit into several other categories that result in greater LTD benefits, as the benefits are not artificially lowered by a $5,000.00 cap. If the Policy is ambiguous then, in accord with the doctrine of *contra proferentem*,[11] Mr. Slusarski

9. Defendants state that "[i]n this case, the policy directs that satisfactory proof of disability must be provided to LINA and therefore this Court's review will not be de novo, it will be deferential." Defendants' Memorandum in Reply to Plaintiff's Objection to Defendants' Motions for Protective Order (Doc. # 20) ("Defendants' Reply") at 6. Plaintiff appears to at least partially dispute this assessment. *See* Plaintiff's Memorandum in Support of His Opposition to Defendants' Motions for Protective Order (Doc. # 22) ("Plaintiff's Sur–Reply") at 3 (asserting that "this case is to be reviewed *de novo* without any deference whatsoever to LINA's 'determinations' regarding Classification, Interest and Attorneys

Fees"). To the extent that the parties disagree about the applicable standard of review, such disagreement does not affect the Court's resolution of the instant Motions.

10. In a footnote to this assertion, Plaintiff states that his "Request for Admissions to LINA is intended to narrow the issues and facts in dispute to posture the case for potential summary judgment." Plaintiff's Mem. at 4 n. 1.

11. The *contra proferentem* doctrine holds that the terms of an insurance policy must be strictly construed against the insurer and in favor of the insured. *Stamp v. Metropolitan*

should receive the benefit of the lack of clarity and ambiguity in the Plan document. The Plaintiff's discovery seeks information from LINA about its decision making process and why it placed Mr. Slusarski's claim under Class #1.

Plaintiff's Mem. at 4–5.

The Court is not persuaded by this argument. Although Plaintiff suggests that there may be an ambiguity in the Plan, in point of fact there is no ambiguity. Employees of AAAH are not mentioned in the Plan. Although Plaintiff hypothesizes that "he could have fit into several other categories that result in greater LTD benefits . . . ," *id.* at 4, he does not actually contend that he falls within any of these categories. In particular, Plaintiff does not claim that Defendants should have classified him as a Class 7 employee (whose disability benefits are capped at $10,000 per month, *see* Plan Doc. at 000024) or a Class 17 employee (whose disability benefits are capped at $12,000 per month, *see id.* at 000055). Indeed, Plaintiff's failure to make such claim appears to be a tacit recognition that he does not meet the requirements for either of these classes. The Plan Doc. defines Class 7 employees as "[a]ll active, Full-time salaried Employees of Besam Automated Entrance Systems, Inc.," Plan Doc. at 000006, and Class 17 employees as "[a]ll active, Full-time Employees of Yale Security Inc. and YSG Door Security Consultants except any person covered under a collective bargaining unit," *id.* at 000007. There is no suggestion by Plaintiff that he was employed by any of these entities.

Plaintiff's real complaint here is the failure of the Plan to include employees of AAAH. However, plan design does not implicate fiduciary duties under ERISA. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444, 119 S.Ct. 755, 763, 142 L.Ed.2d 881 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [the company], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan,* 24 F.3d 1491, 1498 (3rd Cir.1994) ("ERISA's concern is with the *administration* of benefit plans and not with the precise design of the plan."); *id.* ("[A]n employer is free to develop an employee benefit plan as it wishes because when it does so it makes a corporate management decision, unrestricted by ERISA's fiduciary duties."); *Mata v. E.I. Du Pont De Nemours & Co.,* 456 F.Supp.2d 612, 622 (D.Del.2006) ("An employer's decisions regarding the composition or design of the plan itself, including the determinations of the form or structure of the plan, do not implicate the employer's fiduciary duties."); *see also Edes v. Verizon Commc'ns, Inc.,* 417 F.3d 133, 140 n. 10 (1st Cir.2005) ("Plaintiffs' structural defect claim arising out of an alleged structural defect in plan *design* (as distinct from a structural defect in plan *administration* ) is not cognizable under ERISA § 404."). Thus, the failure of the Plan to include employees of AAAH, the entity which

*Life Ins. Co.,* 531 F.3d 84, 93 (1st Cir.2008). However, it is applicable only when courts undertake de novo review of Plan interpretations. *Id.*

When the administrators of a plan have discretionary authority to construe the plan, they have the discretion to determine the intended meaning of the plan's terms.

In making a deferential review of such determinations, courts have no occasion to employ the rule of *contra proferentem.* Deferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry-the construction of someone else's construction.

*Id.* at 93–94.

Plaintiff claims was his employer, does not give rise to a cause of action for breach of fiduciary duty. *See Tinley v. Gannett Co.*, No. CIV.A.99–484 GMS, 2002 WL 531556, at *4 (D.Del. Mar. 25, 2002) (holding that company's decision to design its plan to exclude independent contractors did not breach any fiduciary duty and summary judgment for defendants was, therefore, appropriate); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."); *Walther v. Pension Plan for Salaried Employees of the Dayton–Walther Corp.*, 880 F.Supp. 1170, 1187 (S.D.Ohio 1994) ("[A]n employer's decision to provide a less favorable plan of benefits and related decisions regarding plan design fall into the category of settlor acts and are not subject to review under the fiduciary standards of ERISA.").

Accordingly, to the extent that Plaintiff seeks to conduct discovery with respect to his classification under the Plan, the Motions are granted.[12]

### Payment of Interest on Back Benefits

■ Plaintiff posits that "fiduciaries (LINA in this case) have an obligation to be consistent." Plaintiff's Mem. at 7 (cit-ing 29 C.F.R. § 2560.503–1(b)(5) (2008)[13]).[14] Building on this premise, Plaintiff argues that "[i]n order to ensure that Mr. Slusarski is treated consistently with other beneficiaries with regard to interest on withheld benefits, it is necessary to know the Defendants' practice or procedure to pay, or not pay, interest on withheld benefits." *Id.* However, LINA's practice or procedure with respect to paying interest on withheld benefits due under other plans is certainly not relevant. LINA's obligation is to apply "plan provisions ... consistently with respect to similarly situated claimants," 29 C.F.R. § 2560.503–1(b)(5), meaning the provisions of this Plan, not all other plans. Thus, to the extent that Plaintiff seeks discovery with respect to LINA's practice or procedure regarding payment of interest on benefits due under other plans, the Motions are granted.

■ As for discovery regarding LINA's practice or procedure with respect to the payment of interest on benefits due under this Plan, Defendants argue that LINA's duty is to administer claims in accordance with the governing plan documents and applicable law. *See* Defendants' Reply at 4; *see also American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d

12. To be clear, if Plaintiff contended that he should have been classified under another specific class, for example, Class 17, the possibility that other employees of AAAH may have been classified as Class 17 employees would be highly relevant, and the Court would allow such discovery. However, as explained above, Plaintiff's complaint is that the Class under which he has been classified has limitations which he believes are unfair and inappropriate given the nature of his position. This complaint goes to plan design and not plan administration. *See Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 140 n. 10 (1st Cir.2005). Thus, the Court declines to permit discovery regarding proper classification.

13. The Court has corrected this citation from "29 C.F.R. § 2650.503–1(b)(5)," Plaintiff's Mem. at 7, to 29 C.F.R. § 2560.503–1(b)(5).

14. 29 C.F.R. § 2560.503–1(b)(5) provides:

(5) The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

29 C.F.R. § 2560.503–1(b)(5) (2008).

574, 579 (3rd Cir.1995) (rejecting plaintiff's breach of fiduciary duty claim because "[t]he duty here in question is no more than the duty to administer an ERISA-covered plan in accordance with the plan's terms"); 29 U.S.C. § 1104(a).[15] Defendants note that Plaintiff is not able to point to any provision of the Plan or ERISA mandating the payment of interest on LTD benefits not paid while the claim administrator undertakes an administrative review. *See* Defendants' Reply at 5. Defendants accordingly contend that even if discovery revealed evidence that LINA has paid interest to other beneficiaries under the Plan, such evidence would not aid Plaintiff's case. *See id.* at 4.

As to this point, the Court disagrees. If discovery reveals that LINA has, under this Plan, reversed a decision denying benefits, awarded benefits retroactively, and paid interest on the benefits for the period during which they were not paid, LINA's unwillingness to do so with respect to Plaintiff would at least raise a question whether the Plan provisions have been applied consistently with respect to similarly situated claimants. In other words, LINA would not be fulfilling its duty to apply the Plan provisions consistently if it denies interest to Plaintiff on the ground that neither the Plan nor ERISA provides for the payment of such interest while paying interest to other similarly situated beneficiaries in the absence of such authority. Accordingly, to the extent that Plaintiff seeks discovery with respect to whether LINA has paid interest to other beneficiaries under the Plan where a decision denying benefits has been reversed (by LINA) and the benefits have been awarded retroactively, the Motions are denied.[16]

### Payment of Attorney's Fees

 With respect to Plaintiff's request for discovery on claim reversals and claim reversals after litigation commenced, the Court is not convinced that Plaintiff has shown a good reason for such discovery. The question of whether Plaintiff is entitled to an award of attorney's fees is a question of law which is determined on the administrative record. *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223 (1st Cir.1996) ("In ERISA cases the district court may grant prejudg-

---

15. 29 U.S.C. § 1104(a), which addresses fiduciary duties, states:

(a) Prudent man standard of care
(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, **a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—**
(A) for the exclusive purpose of:
(I) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) **in accordance with the documents and instruments governing the plan** insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
29 U.S.C. § 1104(a) (bold added).

16. If Plaintiff wishes to take a Rule 30(b)(6) deposition of LINA with respect to this topic, such deposition shall be taken where the witness works or resides. *See Salter v. Upjohn Co.,* 593 F.2d 649, 651–52 (5th Cir.1979) ("It is well settled that '(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this case, the corporation is a defendant.")(quoting 8 C. Wright & A. Miller, *Federal Practice & Procedure* § 2112 at 410 (1970)).

ment interest in its discretion to prevailing fiduciaries, beneficiaries, or plan participants. This judicial discretion encompasses not only the over-arching question— whether to award prejudgment interest at all—but also subsidiary questions that arise after the court decides to make an award, including matters such as the period and rate to be used in calculating interest."). In determining whether to award attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), courts in the First Circuit apply a five factor test:

> (1) the degree of bad faith or culpability of a losing party; (2) the ability of such party to personally satisfy an award of fees; (3) whether such an award would deter other persons acting under similar circumstances; (4) the amount of benefit to the action as conferred upon the members of the pension plan; and (5) the relative merits of the parties' positions.

*Twomey v. Delta Airlines Pilots Pension Plan*, 328 F.3d 27, 33 (1st Cir.2003).

The Court is unpersuaded that in order to apply these five factors Plaintiff needs discovery with respect to the payment of attorney's fees. Accordingly, to the extent that Plaintiff seeks such discovery, the Motions are granted.[17]

### Conflict of Interest Discovery

■ Plaintiff also seeks discovery with respect to whether LINA had a conflict of interest with respect to its handling of claims. As benefits have now been awarded to Plaintiff (and the Court has already determined that there is no ambiguity in the Plan regarding employee classification), the only purpose for allowing such discovery would be to enable Plaintiff to search for evidence supporting his contentions that the benefits should have been awarded earlier and that he should have been paid interest on the overdue payments. While the existence of an actual conflict of interest seems improbable given LINA's ultimate decision to pay benefits, this Court reads *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1 (1st Cir.2009), as authorizing discovery where a "plan administrator has failed to detail its procedures ...," *id.* at 10. The instant case appears to fall into the category where the administrative record does not include "any evidence with respect to [LINA's] conflict-ameliorating procedures." *Id.* Thus, the Court concludes that it should exercise its discretion and grant some discovery on this issue. Bearing in mind that discovery on the issue of whether a structural conflict has morphed into an actual conflict "must be allowed sparingly and ... narrowly tailored so as to leave the substantive record essentially undisturbed," *id.*, the Court grants the following discovery:

1. The Rule 30(b)(6) deposition of LINA of the person or persons most knowledgeable regarding "[t]he income and other incentives and disincentives in place at LINA and/or Cigna with respect to encouraging the denial of claims and appeals or, on the other hand[,] to encourage accurate claims and appeals determinations." Notice to Take Deposition ¶ 6;

2. Plaintiff's request for production by LINA of the following documents: "All documents evidencing income and other incentives and disincentives in place at LINA with respect to encouraging the denial of claims and appeals or, on the other

---

**17.** Unlike interest on overdue benefits, which it is at least conceivable that Defendants might pay without court involvement, the payment of attorney's fees without court involvement is not a reasonable possibility. Thus, the argument that Plaintiff needs this discovery in order to determine whether he is being treated differently than other similarly situated beneficiaries does not apply.

hand[,] to encourage accurate claims and appeals determinations." Requests for Production to LINA ¶ 4;

3. Plaintiff's request to propound the following interrogatory to LINA: "Provide all income and other incentives and disincentives in place at LINA with respect to encouraging the denial of claims and appeals or, on the other hand[,] to encourage accurate claims and appeals determinations." Interrogatories to LINA, Interrog. No. 10.

Accordingly, to the extent that the Motions seek to prevent Plaintiff from conducting the conflict of interest discovery authorized above, the Motions are denied.

### Request for Admissions

Plaintiff notes that Defendants do not mention Plaintiff's Request for Admissions. *See* Plaintiff's Sur–Reply at 4. Plaintiff argues that answering these requests would not burden Defendants and would only serve to increase judicial efficiency. *See id.* In large measure, the Court agrees. LINA shall respond to the request for admissions, except that Request Nos. 31–34 are modified so that they only apply to benefits awarded under this Plan. To the extent the Motions seek to prevent LINA from having to respond to the requests for admissions as modified above, the Motions are denied.

### Summary

To the extent that Plaintiff seeks discovery with respect to proper classification, payment of interest on benefits due under other plans, and attorney's fees, the Motions are granted. To the extent that Plaintiff seeks discovery with respect to: a) the payment of interest on benefits awarded under this Plan, b) LINA's policies, practices, and procedures which prevent, mitigate, or exacerbate its structural conflict, and c) the request for admissions

as modified by this Memorandum and Order, the Motions are denied.

So ordered.